## McCOY v. TEXAS POWER & LIGHT CO.
### (No. 9407.)

(Court of Civil Appeals of Texas. Fort Worth. Nov. 27, 1920. Rehearing Denied Jan. 8, 1921.)

1. **Electricity** ⬅15(1) — Boy killed while climbing tower supporting defendant's wires on his father's land held a trespasser.

Where an electric power company had a right of way across plaintiff's land, and erected a tower to support its wires thereon, and thereby had a right to use the land immediately under the tower, it might to that extent be said to be the owner of the land occupied by the tower; so that where plaintiff's 14 year old son, for his amusement, started to ascend the tower without the permission of defendant or his agents, and was killed by the electric current, the boy was a trespasser.

2. **Negligence** ⬅25—Electric wire tower with no warning held not nuisance attractive to children.

Where defendant power company had erected a tower to support its wires on plaintiff's land under a grant of right of way, and plaintiff's 14 year old son, for his amusement, climbed the tower and was killed by the current, defendant was not liable on the ground of maintaining a nuisance attractive to children, notwithstanding that no warning had been placed by defendant on the tower.

Appeal from District Court, Johnson County; O. L. Lockett, Judge.

Action by H. D. McCoy against Texas Power & Light Company. Judgment for defendant on demurrer, and plaintiff appeals. Affirmed.

Templeton, Beall, Williams & Callaway, of Dallas, and S. E. Padelford, of Fort Worth, for appellant.

Odell, Lockett & Henry, of Cleburne, for appellee.

BUCK, J. This is an appeal from the district court of Johnson county from a judgment sustaining the defendant's general demurrer to plaintiff's petition. On October 26, 1916, plaintiff filed his original petition, and on May 7, 1917, defendant filed its answer, containing, among other defenses, a general demurrer. On May 6, 1919, the court sustained the general demurrer, and on November 25, 1919, entered an order granting both parties leave to file amendments. On the same day plaintiff filed his amended petition, largely to the same effect as his original petition. On the same day judgment was entered sustaining defendant's general demurrer, and plaintiff has appealed.

Plaintiff sued for damages arising by reason of the death of his 14 year old son, who climbed up one of the towers erected by the defendant, the Texas Power & Light Company, on plaintiff's land, over which the defendant had a right of way. The petition, after stating the residence of the plaintiff, and that defendant was a corporation organized and existing under and by virtue of the laws of the state of Texas, and having its office in Cleburne, Johnson county, and that defendant was engaged in the manufacture, transmission, and sale of electricity and electrical power at various points in the state of Texas, and that it maintained and operated transmission lines running from Waco, in McLennan county, Tex., by way of Cleburne, to Fort Worth, Tarrant county, Tex., and between various other points in said state, alleged:

"That said transmission lines consisted of steel-frame towers, upon and to which were strung and attached what are known as high-tension wires, consisting of heavy copper wires, upon, along, and through which electricity is transmitted from one station to another for the purpose of being distributed for local use for power, light, and other purposes; that electricity is generated at the power stations of the defendant along its said lines, and transmitted through said high-tension wires to its various substations along its said lines for the purpose above named.

"That the plaintiff is the owner of a tract of land adjoining the city of Cleburne, in Johnson county, Tex., which said tract of land is and was, at the dates hereinafter alleged, used by him in connection with his business as a contractor and for the storage of materials used by him in connection with said business; that upon said tract of land so owned by plaintiff the defendant does and did at the times hereinafter alleged, maintain one of the towers above referred to, said tower consisting of a framework constructed of steel bars or strips, being about * * * feet high and about * * * feet square at its base, and becoming narrower as it approaches the top, until it is about * * * feet square at the top of said tower, except a conical shaped cap on top of same, the upright pieces of said tower being fastened together and braced by other steel pieces or strips composing the braces holding said tower together; that at or near the top of said tower are extended certain cross-arms, also constructed of steel, there being at the time hereinafter alleged three of said cross-arms extending out from said tower for a distance of about three feet on either side of same; that suspended from cross-arms are certain insulators, and attached thereto are said large copper high-tension wires above described, there being six of said wires suspended from and attached to the cross-arms on said

tower, three of the same being on either side thereof; that on one corner of said tower are attached steel spikes or projections from the steel pieces forming one of the upright corners of said tower, placed thereon for the purpose of forming a ladder upon said tower; that said spikes, together with the braces forming said tower, as above described, form a continual ladder from a point a few inches from the ground to the top of said tower.

"That at the dates and times hereinafter alleged the defendant transmitted upon and along said wires above described a great amount of high-tension electricity, and that by reason thereof said towers constituted a very dangerous place; that the amount of the electricity in said wires was so great that it was unnecessary for persons to come in actual contact with the wires conducting such electricity in order to become affected thereby, but that there were certain zones or distances from said wires within which, under certain conditions, the effect of said electricity could be felt and within which it was dangerous to human life to come. '

"That said towers above described, together with said high-tension wires thereon above referred to, had been placed upon plaintiff's said tract of land during the year 1913, and that such towers as a means of transmitting high-tension electricity had never been theretofore used upon plaintiff's said property, or in the vicinity thereof, or in the locality in which same was situated, and that the nature of said towers and the wires carried thereupon, and the great force and danger incident thereto, were not understood by the people of that locality, and particularly by children of tender years and lack of experience; and that the dangers incident to said towers without coming in contact with the wires thereupon, by reason of the great amount of electricity being carried by said wires, was not known to, or understood by, the public, and particularly by children and persons of tender age and lack of experience living in the vicinity of said towers; that as constructed the said wires carrying said electricity were placed outside of said towers and some distance therefrom, and that the danger incident to coming within the space between said wires or within the zone of said electricity, without coming in direct contact with said wires, was not known or understood by the public in that vicinity, and particularly to children and persons of tender years and lack of experience in that locality, and by the plaintiff's son hereinafter referred to; that by reason of the peculiar construction of said towers hereinbefore described and referred to, and the ease of access to all parts of said towers by reason of said spikes constituting a ladder thereon as hereinbefore described, and by reason of the apparent security of same, and the lack of danger in connection therewith by reason of the fact that said wires carrying said electricity were located outside of the said towers and some distance therefrom, and by reason of the lack of knowledge and information on the part of the public with reference to the great danger of coming within the zone of said high-tension electricity without coming in direct contact with the said wires, and by reason of the fact that said towers were novel and new structures, and by reason of the failure of the defendant to place any warning signs upon said tower, or to in any wise advise the public of dangers thereto, as hereinafter alleged, said towers constituted an attractive nuisance and a constant invitation to the public, and particularly to children and persons of tender years and lack of experience, to climb said towers; that by reason of all of the matters hereinbefore alleged, and particularly by reason of their recent construction and use, and by reason of the fact that said ladder on said tower above described and referred to was left upon and exposed and easily accessible to children and the public generally, that said towers were, on account of their nature and surroundings, especially and unusually calculated to and did attract children and persons of tender years and lack of experience, and induced them to go upon said premises and climb said towers; that such towers were therefore an unusual attraction for children and other persons unacquainted with the dangers of· using same as above set out, and with the existence of the danger zones above referred to; that it was well known to the defendant at said time that said conditions existed, and that said tower above referred to upon plaintiff's said land was attractive to children and others, and that children were constantly and frequently using said towers and climbing upon same; that, understanding said facts, the defendant negligently and carelessly failed to use any means to prevent the use of said towers by children and other persons unaccustomed to said dangers and unacquainted therewith, and negligently left the steps on said towers easily accessible to ·children; and that the defendant negligently and willfuly failed to place upon said towers or about same or adjacent thereto any warning signs of any character advising persons on or about said premises, or attracted thereon by said towers. of the dangers incident to using said tower or climbing same."

It was further alleged that on October 29, 1914, plaintiff's son, Wert McCoy, was a boy about 14 years of age, and on that date went, in the discharge ,of his proper duties, and for the purpose of procuring some material belonging to the plaintiff, to the lot owned by plaintiff on which the tower was erected, and that attracted by the condition of said tower, as above set out, and without any notice or knowledge of the probability of danger by reason thereof, and particularly of the existence of said danger zone, as above set out, and having no notice or reason to believe that there was any probability of danger upon said tower unless he came within actual contact with said wires above described, ascended said tower upon the steps of the ladder at the corner of said tower, as above described, and while so ascending same he came within said danger zone without touching any of said wires or coming in contact therewith; he received a severe electrical shock, causing him to fall from the position in which he was standing upon said tower and to catch upon some of the steel braces attached to said tower; that he was thereafter rescued and removed from said

position and taken to plaintiff's home, where he died shortly thereafter. Sufficient allegations are contained in the petition to authorize a recovery for damages, provided the liability of defendant is shown.

Plaintiff's ground of recovery, if any, is that by reason of the manner of construction and apparent security of the light tower in controversy, located upon plaintiff's land, said tower was especially and unusually calculated to attract children and persons of tender years, such as the son of plaintiff; but that in fact it was a highly dangerous instrumentality of recent construction and use in that community, the dangers of which were not generally known to, and understood by, the public, but all of said dangers were known to the defendant, and that it took no precaution to warn the public of such dangers or to protect it therefrom. Appellant's claim is that his case comes under the principle announced by the courts in the "Turntable Cases," and cities such cases as Evansich v. G., C. & S. F. Ry. Co., 57 Tex. 126, 44 Am. Rep. 586; H. & T. C. Ry. Co. v. Simpson, 60 Tex. 103; G., C. & S. F. Ry. Co. v. Styron, 66 Tex. 421, 1 S. W. 161; G., C. & S. F. Ry. Co. v. McWhirter, 77 Tex. 356, 14 S. W. 26, 19 Am. St. Rep. 755; D. & R. S. Ry. Co. v. Harlan, 39 Tex. Civ. App. 427, 87 S. W. 732; S. N. & S. T. Ry. Co. v. Voss, 159 S. W. 66; Little v. James McCord Co., 151 S. W. 835; Johnson v. Atlas Supply Co., 183 S. W. 31.

In S. A. & A. P. Ry. Co. v. Morgan, 92 Tex. 98, 46 S. W. 28, a turntable case, our Supreme Court says:

"When, however, one enters upon the private property of another, his relation to that property and the owner thereof is not prima facie lawful; and therefore the law does not merely, by reason of his presence thereon, impose upon the owner any duty of care for his protection, although his wrongful presence does not relieve the owner of the general duty imposed upon him by law, as a member of society, not to intentionally injure another. In such a case, to state a cause of action against the owner for damages for injury inflicted upon him while thereon, the petition need only show a violation of such general duty, or, in other words, an intentional injury. Such intent can be established either by direct evidence or by circumstances showing such a reckless disregard of the lives and safety of others as to estop the owner from denying the intent. * * *

"If, however, the person entering upon the private property of another does so by invitation of the owner, a lawful relation is thereby established, and the law imposes upon the owner a duty of care for his safety, the degree of which we need not consider here. Such invitation may be express or implied. Where it is claimed to have been express, it is a mere question of fact as to whether it was extended, and no legal difficulty exists. Where, however, it is sought to establish the fact of invitation from circumstances, the greatest difficulty arises in determining the character of circumstances, from which the fact of invitation can be inferred. This is especially true where, as in the case before us, the invitation is sought to be established by estoppel against what was in all probability the true intent of the owner.

"It has been contended broadly that when an owner places or permits anything upon his property which is attractive to others, and one is thereby induced to go thereon, the invitation may be inferred as a fact by the court or jury. Now, since it is manifest that to some classes of persons, such as infants, the things ordinarily in existence and use throughout the country, such as rivers, creeks, ponds, wagons, axes, plows, woodpiles, haystacks, etc., are both attractive and dangerous, it is clear that the adoption of such a broad contention would be contrary to reason, lead to vexatious and oppressive litigation, and impose upon owners such a burden of vigilance and care as to materially impair the value of property and seriously cripple the business interests of the country. Therefore it has been generally held that the invitation cannot be inferred in such cases. These cases rest upon the sound principle that, where the owner makes such use of his property as others ordinarily do throughout the country, there is not, in legal contemplation, any evidence from which a court or jury may find that he had invited the party injured thereon, though it be conceded that his property, or something thereon, was calculated to, and did, attract him. Railway Co. v. Edwards, 90 Tex. 65, 36 S. W. 430; Dobbins v. Railway Co., 91 Tex. 60, 41 S. W. Rep. 62, and cases cited therein; Peters v. Bowman, 115 Cal. 345, 47 Pac. 113, 598; Joske v. Irvine, 91 Tex. 574, 44 S. W. 1059.

"Where, however, the owner maintains upon his premises something which, on account of its nature and surroundings, is especially and unusually calculated to attract, and does attract, another, the court or jury may infer that he so intended, and hence invited him. Where one exhibits on his own land, near where children are likely to be, pictures or unusually attractive machinery, etc., he can expect no other result than that it will appeal to the known instincts of a child of immature judgment, and draw him to venture thereon, just as the dog was drawn into the baited trap by the scent of meat."

In Stamford Oil Co. v. Barnes, 103 Tex. 409, 413, 128 S. W. 375, 376, 31 L. R. A. (N. S.) 1218, Ann. Cas. 1913A, 111, Court of Civil Appeals decision in 119 S. W. 871, our Supreme Court says:

"These cases [cited] repudiate the contention that the owner of premises is under any general duty, in putting and keeping thereon buildings and other structures used by them in their legitimate businesses, to exercise care to make them safe for the use of others, even children, coming thereon without invitation, authority, or allurement. * * *

"These cases rest upon the sound principle that, where the owner makes such use of his

property as others ordinarily do throughout the country, there is not, in legal contemplation, any evidence from which a court and jury may find that he has invited the party injured thereon, though it be conceded that his property, or something thereon, was calculated to and did attract him."

In Simonton v. Citizens Electric Light & Power Co., 28 Tex. Civ. App. 374, 67 S. W. 530, writ of error denied, the Galveston court, speaking through Justice Pleasants, held that the maintenance by an electric light company in poles along a highway of spikes driven in them from a point near the ground, to allow ascent for placing and repairing wires, such placing of spikes being the ordinary one, and not shown to be improper or unnecessary, is not an invitation to children to use them, so as to make the company liable for injury to a child in attempting to climb them. The court further says:

"In all of the Turntable Cases the invitation is implied from the fact that by reason of the turntable being left unlocked, so that it could be, and was, used by children as a plaything, it was especially and unusually attractive. No issue of negligence could arise on the allegations of this petition by reason of the proximity of defendant's pole to the public highway. Plaintiff's son was not injured while using the highway, but while going upon and using for purposes of amusement the property of defendant. Gay v. Railroad Co., 141 Mass. 407, 6 N. E. 236. It has been held that railway cars and cattle pens and chutes used in the herding of cattle are not such specially and unusually attractive structures as to come within the doctrine of the Turntable Cases, and a child going upon such structures is a trespasser, and cannot recover for injuries caused by the negligence of the owner of such property, unless the act causing the injury be willful. * * *

"We believe that it would be unwise to extend the doctrine of the Turntable Cases to cases of this character. It would seriously retard the material progress and cripple the business interests of the country if persons owning and operating public utilities which, from their very nature, require the use of structures and appliances placed in proximity to public highways, should be forbidden to use or maintain any structure or appliance of a kind calculated to attract and allure children to attempt their use as playthings, and which, when so used, becomes dangerous. As said by Judge Gaines in the case of Railroad Co. v. Edwards (Tex. Sup.) 36 S. W. 431, 32 L. R. A. 825, we believe that the doctrine upon which the Turntable Cases have been sustained goes to the limit of the law, and sound public policy forbids that it be further extended."

In Brush Electric Light & Power Co. v. Lefevre, 93 Tex. 604, 57 S. W. 640, 49 L. R. A. 771, 77 Am. St. Rep. 898, the Supreme Court reversed a judgment of a recovery for plaintiff against the electric light company in a suit in which the plaintiff's son was killed by coming in contact with the defendant's wires stretched above the streets of the city of Galveston. Judge Brown, speaking for the court, said:

"There can be no liability for the injury in this case unless, from all the circumstances, the electric light company could reasonably expect that some person might be injured by its failure to cover the wires placed by it upon the awning where the deceased received his injury. Railway Co. v. Bigham, 90 Tex. 225, 38 S. W. 162. In the case cited Chief Justice Gaines, on behalf of the court, expressed the rule in the following language, quoting from the Supreme Court of the United States in the case of Railroad Co. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256: 'But it is generally held that, in order to warrant a finding that negligence * * * is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen, in the light of the attending circumstances.' This is probably as accurate a statement of the doctrine as can be given, and is substantially that generally laid down by the authorities."

In Water & Light Co. v. Webb's Adm'r, 129 Ky. 395, 111 S. W. 712, 18 L. R. A. (N. S.) 179, 130 Am. St. Rep. 469, the court held that where electric light wires are put upon poles and placed 18 feet above the street, the owner need not anticipate that children will reach such wires by climbing poles or walking up guy wires which extend from the top of the pole to the ground at an angle of 45 degrees, and where children trespass on the property of another they take the risk, unless the circumstances in the case are within the principle applicable to cases where dangerous instrumentalities are maintained alluring to children. In this connection it was held that plaintiff had shown no liability on the part of the defendant, and as to this the court said:

"As long as electric light wires are not put under ground, they must be put upon poles, and, where they are placed above the street as high as 18 feet, the company should not be required to anticipate that children will climb up to the wires and get hurt. * * * A guy wire placed on a high pole to keep it in place, or some such contrivance, cannot well be dispensed with. Such a wire is not a dangerous instrumentality, attractive or alluring to children, within the meaning of the Turntable Cases. The little boy was a trespasser upon the defendant's wire, and being a trespasser, he cannot complain that the premises were unsafe. Children, no less than adults, when they trespass upon the property of another, take the risk unless the circumstances bring the case within the principle of what is known as the Turntable Cases, where a dangerous instrumentality is maintained, with knowledge, actual or constructive, that it is alluring to children and endangers them."

In Williamson v. G., C. & S. F. Ry. Co., 40 Tex. Civ. App. 18, 88 S. W. 279, writ of error denied, the Dallas Court of Civil Appeals affirmed a judgment denying a recovery to plaintiff for the death of his four year old child, caused by a falling from some steps made by an abutment to the bridge crossing a creek. See, also, City of Greenville v. Pitts, 102 Tex. 1, 107 S. W. 50, 14 L. R. A. (N. S.) 979, 132 Am. St. Rep. 843; Fairbairn v. American Power El. Co., 170 Cal. 115, 148 Pac. 788; Blackstone v. Penn Cent. L. & O. Co., 249 Pa. 519, 95 Atl. 95; Denison L. & P. Co. v. Patton, 105 Tex. 621, 154 S. W. 540, 45 L. R. A. (N. S.) 303.

The only difference between the case at bar and some of the cases above cited is that plaintiff alleged that (1) no warning was placed on the tower informing the public or those contemplating climbing it of the dangers connected therewith; (2) that the tower was on plaintiff's land; (3) on account of the high voltage capacity of the wires of the defendant, and the amount of electricity transmitted thereon, certain danger zones extended beyond the wires, and that the deceased did not know, and the public generally did not know of this fact, and that the boy was killed by a shock received without his having touched any of the transmission wires.

[1] By reason of the defendant's right of way across plaintiff's land, it had the right to use the land immediately under the tower, and to this extent might be said to be the owner of the land occupied by the tower. If so, plaintiff's son was a trespasser when he started to ascend the tower without permission of the defendant or his agents. The fact that the tower was a dangerous instrumentality would not place any liability upon defendant unless it owed a duty to the public generally and to the boy killed specially. Therefore we come to the question whether or not the allegation that no warning had been placed by the defendant on the tower is a violation of a duty which the defendant owed to the public and to the plaintiff's son.

[2] Unless the tower, on account of its nature and surroundings, was especially and unusually attractive and did attract children, and did attract the youthful son of plaintiff, the defendant owed no duty to the public to warn it from climbing on the tower. City of Greenville v. Pitts, supra. And while the determination of the question here involved is not without difficulty, and has occasioned much thought and laborious study on our part, yet we are unable to distinguish the case here presented from other cases where children have climbed upon light poles or telephone poles and been injured.

Therefore we conclude that the trial court did not err in sustaining the demurrer, and the judgment is affirmed.