## McCOY v. TEXAS POWER & LIGHT CO.
### (No. 301–3612.)

(Commission of Appeals of Texas, Section A. April 5, 1922. Rehearing Denied, May 3, 1922.)

**1. Negligence ⬳32(2) — Adult invitee not a trespasser.**

The rule that a person going on the premises of another is a trespasser does not apply even to adults who go upon the land by express invitation of the owner.

**2. Negligence ⬳39 — Structure attractive to children raises implied invitation.**

An invitation by the owner of premises to children to go upon the premises can be implied from the maintenance there of something unusually attractive to children, with full knowledge that it does attract them, and the child going on the premises in response to such implied invitation does not become a trespasser.

**3. Negligence ⬳111(1)—Petition for death of boy who climbed tower of high-tension line held sufficient.**

A petition to recover for the death of a boy 14 years old, which alleged that defendant maintained on the land of the boy's father a steel tower carrying high-tension electric power lines without any warning of the danger therefrom and having thereon steps whereby one could ascend to the top of the tower where he was in danger from the electric currents, even though he did not come in contact with the wires, that the people in the neighborhood had no knowledge of the danger from such currents if they did not touch the wires, and that the defendant thereby impliedly invited the boy to climb upon the tower, as a result of which he was killed without coming in contact with the wires, *held*, sufficient to state a cause of action under the attractive nuisance doctrine.

**4. Negligence ⬳23(1) — Attractive nuisance doctrine not limited to turntables.**

The doctrine of attractive nuisance as originally laid down in the turntable cases, is not limited to turntables, but applies in all cases where children are impliedly invited by an attractive nuisance to place themselves in a position to be injured.

**5. Electricity ⬳14(1)—Public character of defendant's business does not excuse failure to give reasonable protection.**

The fact that an electric power and light company is engaged in serving the public does not excuse its failure, in maintaining its line, to give proper protection to those in the vicinity.

### On Motion for Rehearing.

**6. Pleading ⬳225(3)—Amendment to petition need not be made at same term demurrer is overruled.**

Under Vernon's Sayles' Ann. Civ. St. 1914, arts. 1825, 1910, and district and county court rules 24 and 26 (67 S. W. p. xxii), requiring demurrers to be heard at the term at which filed, if possible, and amended pleadings to be filed, if leave is given, a reasonable time before the case is called for trial, it is not necessary that an amended petition be filed at the same term at which a demurrer to the original petition was sustained.

**7. Pleading ⬳223—Subsequent judgment sustaining demurrer held to show former order sustaining demurrer was not intended to be final.**

Even if an order or judgment sustaining a demurrer to the petition and providing that plaintiff take nothing by his suit, but giving him leave to amend, is ambiguous, a judgment rendered at a subsequent term sustaining a demurrer to the amended petition, which it recited was filed under leave given at the previous term, shows that it was not the court's intention by the first order to render a final judgment.

**8. Pleading ⬳223—Order sustaining demurrer with leave to amend is not final.**

Notwithstanding the language of an order sustaining a demurrer to the petition, that

plaintiff take nothing by his suit and that defendant go hence with his costs, a further order giving plaintiff leave to file an amended petition takes away from the judgment its finality.

**9. Judgment ⬯526—Other proceedings considered in construing ambiguous judgment.**

If a judgment is ambiguous by reason of the contradictory terms used, a common-sense construction can be put on the language as a whole, and the record in the case, including the pleadings, is admissible to aid in such construction.

**10. Pleading ⬯225(3)—Amended petition can be filed at subsequent term, unless otherwise required.**

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 1919, providing that business not determined before adjournment shall stand continued until the next succeeding term of the court, an amended petition can be filed at the term following that at which a demurrer to the original petition was sustained and leave to amend given, in the absence of a requirement for an earlier amendment.

Error to Court of Civil Appeals of Second Supreme Judicial District.

Action by H. D. McCoy against Texas Power & Light Company. A judgment dismissing the case, on plaintiff's refusal to amend after demurrer to his first amended original petition was sustained, was affirmed by the Court of Civil Appeals (229 S. W. 623), and plaintiff brings error. Judgments of the Court of Civil Appeals and of the district court reversed, and cause remanded to the district court for trial.

Goree, Odell & Allen, of Fort Worth, for plaintiff in error.

Templeton, Beall, Williams & Callaway, of Dallas, and S. C. Padelford, of Fort Worth, for defendant in error.

RANDOLPH, J. This suit was filed by plaintiff against the defendant company to recover damages for the death of the plaintiff's minor son. The district court of Johnson county, before whom the case was tried, sustained a general demurrer to plaintiff's first amended original petition, and, on refusal of plaintiff to amend, dismissed the case. This action of the trial court was sustained by the Court of Civil Appeals for the Second Supreme Judicial District. 229 S. W. 623.

The proposition submitted to the Supreme Court by the application for writ of error is that the action of the trial court and Court of Civil Appeals was, and is, erroneous for the reason that the petition presents a case of actionable negligence against the defendant.

The material allegations of the petition setting forth the grounds of negligence relied on are as follows:

"That at the dates and time hereinafter alleged, the defendant was engaged in the manufacture, transmission, and sale of electricity and electrical power at various points in the state of Texas, including Cleburne and other points in Johnson county, and that for said purpose the defendant maintained and operated transmission lines running from Waco, McLennan county, Tex., by way of Cleburne in Johnson county, Tex., to Fort Worth in Tarrant county, Tex., and between various other points in said state; that said transmission lines consisted of steel frame towers, upon and to which were strung and attached what are known as high-tension wires, consisting of heavy copper wires, upon, along and through which electricity is transmitted from one station to another for the purpose of being distributed for local use for power, light and other purposes; that electricity is generated at the power stations of the defendant along its said lines and transmitted through said high-tension wires to its various substations along its said lines for the purposes above named.

"That the plaintiff is the owner of a tract of land adjoining the city of Cleburne in Johnson county, Tex., which said tract of land is and was at the dates hereinafter alleged used by him in connection with his business as a contractor and for the storage of materials used by him in connection with said business; that upon said tract of land so owned by plaintiff the defendant does, and did at the times hereinafter alleged, maintain one of the towers above referred to, said tower consisting of a framework constructed of steel bars or strips being about —— feet high and about —— feet square at its base, and becoming narrower as it approaches the top until it is about —— feet square at the top of said tower, except a conical shaped cap on top of same, the upright pieces of said tower being fastened together and braced by other steel pieces or strips composing the braces holding said tower together; that at or near the top of said tower are extended certain cross-arms also constructed of steel, there being at the time hereinafter alleged three of said cross-arms extending out from said tower for a distance of about three feet on either side of same; that suspended from said cross-arms are certain insulators, and attached thereto are said large copper high-tension wires above described, there being six of said wires suspended from and attached to the cross-arms on said tower, three of the same being on either side thereof; that on one corner of said tower are attached steel spikes or projections from the steel pieces forming one of the upright corners of said tower, placed thereon for the purpose of forming a ladder upon said tower; that said spikes, together with the braces forming said tower, as above described, form a continual ladder from a point a few inches from the ground to the top of said tower.

"That at the dates and times hereinafter alleged the defendant transmitted upon and along and upon said wires above described a great amount of high-tension electricity, and that by reason thereof said towers constituted a very dangerous place; that the amount of the electricity in said wires was so great that it was unnecessary for persons to come in actual contact with the wires conducting such electricity

in order to become affected thereby; but that there were certain zones and distances from said wires, within which, under certain conditions, the effect of said electricity could be felt and within which it was dangerous to human life to come.

"That said towers above described, together with said high-tension wires thereon above referred to, had been placed upon plaintiff's said tract of land during the year 1913, and that such towers as a means of transmitting high-tension electricity had never been theretofore used upon plaintiff's said property or in the vicinity thereof, or in the locality in which same was situated, and that the nature of said towers and the wires carried thereupon and the great force and danger incident thereto were not understood by the people of that locality, and particularly by children of tender years and lack of experience; and that the dangers incident to said towers without coming in contact with the wires thereupon by reason of the great amount of electricity being carried by said wires was not known to or understood by the public and particularly by children and persons of tender age and lack of experience living in the vicinity of said towers; that as constructed the said wires carrying said electricity were placed outside of said towers and some distance therefrom, and that the danger incident to coming within the space between said wires or within the zone of said electricity, without coming in direct contact with said wires, was not known or understood by the public in that vicinity and particularly to children and persons of tender years and lack of experience in that locality, and by the plaintiff's son hereinafter referred to; that by reason of the peculiar constructions of said towers hereinbefore described and referred to and the ease of access to all parts of said towers by reason of said spikes constituting a ladder thereon as hereinbefore described, and by reason of the apparent security of same and the lack of danger in connection therewith by reason of the fact that said wires carrying said electricity were located outside of the said towers and some distance therefrom, and by reason of the lack of knowledge and information on the part of the public with reference to the great danger of coming within the zone of said high-tension electricity without coming in direct contact with the said wires, and by reason of the fact that said towers were novel and new structures, and by reason of the failure of the defendant to place any warning signs upon said tower or to in any wise advise the public of dangers thereto, as hereinafter alleged, said towers constituted an attractive nuisance and a constant invitation to the public and particularly to children and persons of tender years and lack of experience to climb said towers; that by reason of all of the matters hereinbefore alleged, and particularly by reason of their recent construction and use, and by reason of the fact that said ladder on said tower above described and referred to was left upon and exposed and easily accessible to children and the public generally, that said towers were on account of their nature and surroundings, especially and unusually calculated to and did attract children and persons of tender years and lack of experience and induced them to go upon said premises and climb said towers; that such towers were therefore an unusual attraction for children and other persons unacquainted with the dangers of using same as above set out and with the existence of the danger zones above referred to; that it was well known to the defendant at said time that said conditions existed and that said tower above referred to upon plaintiff's said land was attractive to children and others, and that children were constantly and frequently using said towers and climbing upon same; that, understanding said facts, the defendant negligently and carelessly failed to use any means to prevent the use of said towers by children and other persons unaccustomed to said dangers and unacquainted therewith, and negligently left the steps on said towers easily accessible to children; and that the defendant negligently and willfully failed to place upon said towers or about same or adjacent thereto any warning signs of any character advising persons on or about said premises or attracted thereon by said towers of the dangers incident to using said tower or climbing same.

"That on, to wit, the 29th day of October, 1914, plaintiff's son Wort McCoy was a boy about 14 years of age, and that on said date plaintiff's said son went to the lot owned by the plaintiff above described, in the proper discharge of his duties, for the purpose of procuring some material belonging to the plaintiff, and was rightfully upon said premises for said purpose; that while upon said premises plaintiff's said son, attracted by the condition of said tower, as above set out, and without any notice or knowledge of the probability of danger by reason thereof, and particularly of the existence of said danger zones as above set out, and having no notice or reason to believe that there was any probability of danger upon said tower unless he came in actual contact with said wires above described, ascended said tower upon the steps or ladder upon the corner of said tower as above described, and that while so ascending same he came within said danger zone above described, and without touching any of said wires or coming in contact therewith that he received a great and severe electrical shock causing him to fall from the position in which he was standing upon said tower, and to catch upon some of the steel braces attached to said tower; that he was thereafter rescued and removed from said position and taken to plaintiff's home, where he died upon said date, after great pain and suffering, as hereinafter described.

"That the defendant was negligent in constructing and maintaining said tower and transmission lines in the manner above described and in not properly insulating said wires to prevent the escape of electricity therefrom, and in permitting said electricity to escape from said wires in such a way as to become dangerous to the lives of people in and about said tower, and also in constructing and maintaining said tower in such a manner as to constitute an attractive nuisance, attraction and invitation to children and people of immature years and inexperience, and in not guarding said tower in such a manner as to prevent same from being used by children, and in not warning the public, and persons rightfully upon said premises, of the dangers incident to using said tower, and of the existence of said danger zone, above described, and of the probability of injury by coming within such zone, and in permitting

electricity to escape from said wires and come in contact with plaintiff's said son, and of thereby inviting persons to use said tower and climbing upon same, and that the negligence of defendant in each and all said respects was the proximate cause of the suffering and death of his said son."

The Court of Civil Appeals in passing upon the sufficiency of the allegations in the petition, after citing a number of authorities, say:

"The only difference between the case at bar and some of the cases above cited is that plaintiff alleged that (1) no warning was placed on the tower informing the public or those contemplating climbing it of the dangers connected therewith; (2) that the tower was on plaintiff's land; (3) on account of the high voltage capacity of the wires of the defendant, and the amount of electricity transmitted thereon, certain 'danger' zones extended beyond the wires, and that the deceased did not know, and the public generally did not know, of this fact, and that the boy was killed by a shock received without his having touched any of the transmission wires.

"(1) By reason of the defendant's right of way across plaintiff's land, it had the right to use the land immediately under the tower, and to this extent might be said to be the owner of the land occupied by the tower. If so, plaintiff's son was a trespasser when he started to ascend the tower without permission of the defendant or his agents. The fact that the tower was a dangerous instrumentality would not place any liability upon defendant unless it owed a duty to the public generally and to the boy killed specially. Therefore we come to the question whether or not the allegation that no warning had been placed by the defendant on the tower is a violation of a duty which the defendant owed to the public and to the plaintiff's son.

"(2) Unless the tower, on account of its nature and surroundings, was especially and unusually attractive and did attract children, and did attract the youthful son of plaintiff, the defendant owed no duty to the public to warn it from climbing on the tower. City of Greenville v. Pitts, supra. And while the determination of the question here involved is not without difficulty, and has occasioned much thought and laborious study on our part, yet we are unable to distinguish the case here presented from other cases where children have climbed upon light poles or telephone poles and been injured."

[1, 2] In sustaining the action of the trial court in dismissing the case, the Court of Civil Appeals held that the plaintiff's son was a trespasser when he started to ascend the tower without the permission of defendant or its agent. This is the rule as to adults but not the rule to be applied to children of tender years. However, as to adults this rule is limited in its application so as not to include those adults who are on another's land by express invitation of the owner. In applying this limitation as to children, our courts are all but unanimous in holding that this invitation can be implied from the fact that there was something on the premises unusually attractive to children, placed and kept there by the owner with full knowledge that it is so attractive and does attract children of immature years; in which event the invitation is implied, and the child by his presence on the premises does not become a trespasser.

[3] The petition in this case charges negligence on the part of the defendant in maintaining its tower in a manner to make it unusually attractive to children, and charges that, having done so, it did not do as it should have done, give warning to such children of the dangers they would encounter if they entered upon such premises; and also charges that the plaintiff's son was attracted by such tower, and other appropriate allegations not necessary to repeat here, as that portion of the petition is set out above.

The plaintiff's pleadings set out a description of the electric light tower that presents a picture wholly different from the ordinary timber telegraph or electric light pole and undoubtedly raises the question of whether or not it was an attractive nuisance, and one that the jury should have passed on under appropriate instructions.

[4] We are not intending to extend the doctrine as set out in the "turntable" cases, but simply to insist that the doctrine therein stated is not limited to turntables, but is intended to be applied in all cases where children of tender or immature years are impliedly invited by an "attractive nuisance" to place themselves in a position to be injured. The petition in this case stating, in our opinion, a legal cause of action and stating such facts as entitled the plaintiff to a hearing on the merits, we hold that there was error in sustaining the demurrer and dismissing the case. In order that the authority for this holding may be apparent, we quote from the following cases:

In passing on the sufficiency of the plaintiff's petition in the case of S. A. & A. P. Ry. Co. v. Morgan, 92 Tex. 98, 46 S. W. 28, the Supreme Court holds that as the petition did not show an invitation in that it neither alleged such fact nor that any turntable was unusually attractive; nor did it allege that there was any intent to injure within the meaning of the doctrine that, where one enters upon the property of another, the law imposes upon the owner the general duty imposed upon him by law as a member of society not to intentionally injure such trespasser, for those reasons that the general demurrer should have been sustained. But in arriving at this conclusion and in discussing the case the court say:

"If, however, the person entering upon the private property of another does so by invitation of the owner, a lawful relation is thereby established and the law imposes upon the owner a duty of care for his safety, the degree of

which we need not consider here. Such invitation may be express or implied."

Again, in the same case the court say:

"Where, however, the owner maintains upon his premises something which on account of its nature and surroundings is especially and unusually calculated to attract and does attract another, the court or jury may infer that he so intended and hence invited him. Where one exhibits on his own land, near where children are likely to be, pictures or unusually attractive machinery, etc., he can expect no other result than that it will appeal to the known instincts of a child of immature judgment and cause him to venture thereon, just as the dog was drawn into the baited trap by the scent of meat. Townsend v. Wathen, 9 East. 277.

"Thus we see (1) that a general duty is imposed upon an owner as a member of society not to intentionally injure any one, and (2) that, if he invites one on his premises, an additional duty is imposed to use care to avoid his being injured; and that while the first duty exists in all cases, and its violation may be shown by direct evidence or by circumstances, the second as well as its violation may be shown by direct evidence or by circumstances. Therefore if the party injured shows in his petition either that his injury was intentional, as above indicated, or that he was invited and subsequently injured by reason of the failure of the owner to use the care required of him by law, he states a cause of action.

"In so far as the turntable case and other cases involving injuries upon dangerous machinery or private property may be considered to lay down the broad proposition that the owner can be held liable without proof of either an intent to injure or an invitation, as these have been above explained, we do not think them based upon sound principle."

In the case of Evansich v. G., C. & S. F. Ry. Co., 57 Tex. 129, 44 Am. Rep. 586, Judge Stayton says:

"In no class of cases can this practical experience (of juries) be more wisely applied than in that we are considering. We find, accordingly, although not uniform or harmonious, that the authorities justify us in holding in the case before us, that, although the facts are undisputed, it is for the jury and not for the judge to determine whether proper care was given, or whether they establish negligence. Railroad Company v. Stout, 17 Wall. 664."

In this case the implied invitation is expressly alleged, and further it is alleged:

"That it was well known to the defendant at said time that said conditions existed and that said tower above referred to upon plaintiff's said land was attractive to children and others and that children were constantly and frequently using said towers and climbing upon same."

Judge Williams, in the case of Stamford Oil Mill v. Barnes, 103 Tex. 413, 128 S. W. 376, 31 L. R. A. (N. S.) 1218, Ann. Cas. 1913A, 111, laying down the general rule that the owner of the premises is not under any general duty in putting and keeping thereon buildings and other structures used by them in their legitimate business, to exercise care to make them safe for the use of others, even children, coming thereon without invitation, authority, or allurement, says:

"That is very different from the proposition that the owner, after he has constructed and is keeping upon his premises machinery, or other thing, with which there is danger of contact resulting in injury to those coming thereon, may not make himself responsible for their coming and consequent injury by some course of conduct calculated naturally to bring it about. That he may is so well established that the proposition hardly needs to be stated; and hence, it is obviously true that there is a duty to abstain from such a course of conduct as that just stated, or else to take proper precaution to protect from injury those likely to be drawn into danger by it; and that the nonobservance of that duty, resulting in injury to one entitled to take advantage of it, is actionable negligence. Therefore it is, that the invitation, license or allurement of others to come upon one's premises may give rise to a responsibility on his part which, without such invitation, license or allurement, would not exist, for injuries sustained by them from dangerous things thereon against which he has not exercised ordinary care to guard them. It may be that that which an owner keeps upon his premises may, in itself, have such powerful attraction for children, or others incapable of exercising proper care for their own safety, as to give rise to the duty to which we refer; but that is not true of those things which the owners of property use in their ordinary businesses in the way in which men of ordinary prudence are accustomed to use them. All this is fully recognized in the opinions referred to, and in the Morgan Case it is shown that the decisions in what are known as the 'turntable cases' are not authority for the notion that any such general duty as that laid down in the charge under review rests upon owners of property, although they put it to uses which may involve danger to children or other persons who may come upon it without invitation, without authority and without enticement or allurement."

We quote from the opinion of the court in S. A. & A. P. Ry. Co. v. Morgan, 24 Tex. Civ. App. 61, 58 S. W. 546, as follows:

"Appellant, by its first assignment of error, charges that the trial court erred in not sustaining a general demurrer to the petition in this case because said petition does not allege that the said Kosciusko was, at the time he was injured, on appellant's turntable by express or implied invitation of appellant. In the case of Railway Co. v. Morgan, supra, Judge Denman, after applying to cases of this character the seemingly harsh rule in no case will the owner of premises be held liable for injury to persons who are on his premises without his express or implied invitation, unless such injury is caused by the willful or intentional act of the owner, says: 'Where, however, the owner maintains upon his premises something which, on account of its nature and surroundings, is especially and unusually cal-

culated to attract, and does attract, another, the court or jury may infer that he so intended, and had invited him. Where one exhibits on his own land, near where children are likely to be, pictures or unusually attractive machinery, etc., he can expect no other result than that it will appeal to the known instincts of a child of immature judgment, and cause him to venture thereon, just as the dog is drawn into the baited trap by the scent of meat.' Measuring the allegations of the petition above quoted by the rule as laid down by Judge Denman, we think the petition is sufficient, in that it alleges facts from which an implied invitation is established, and, in further compliance with Judge Denman's opinion, said implied invitation is specifically alleged."

It will be seen that Judge Pleasants interprets the decision of Judge Denman in the case of Railway v. Morgan, supra, as interpreted in this opinion.

Further, as supporting our views we cite Little v. James McCord Co. (Tex. Civ. App.) 151 S. W. 835; Flippen-Prather Realty Co., v. Mather (Tex. Civ. App.) 207 S. W. 121.

[5] It is true that the defendant is engaged in a legal business and in the service of the public, and that the public is interested in its successful operation. It is also true that, as such servants of the public, the public is interested in seeing that its business is not unlawfully interfered with; but the public is yet more intensely interested in the preservation of human life and in seeing that these agents of commerce do not become carriers of death. It is true that science has succeeded in harnessing the tremendous power of electricity, and it is also true that no method has been discovered whereby this power can be confined to the wire which is its conductor, as it is utterly impractical to attempt to insulate the wires carrying the tremendous voltage amounting to 30,000 or 60,000 volts. The public knows that it is dangerous to touch a live wire, but very few know that there exists danger of death from this powerful current by near approach to the wire so charged, without actually coming in contact with the wire. Only those who are engaged in the business, and those who have stood beside some inanimate form whose scorched and burned flesh bears mute evidence to its tremendous power, know this. Because it is a legal business and in the service of the public should not, and does not, release the defendant from being subject to all the requirements of the law, that it conduct that business in such manner that will result in reasonable protection to those on its premises either on business or by invitation, express or implied.

We therefore recommend that the judgments of the Court of Civil Appeals and of the district court be reversed, and that this cause be remanded to the district court for trial.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the question discussed in its opinion.

### On Motion for Rehearing.

RANDOLPH, J. The motion for rehearing, filed by distinguished counsel who have come into the case since the rendition of the original opinion herein, presents a "fundamental" error for our consideration which they charge was overlooked by us in our original investigation and report on this case. In reply we wish to say that counsel are mistaken in this statement, but they were doubtless lead to infer this from the fact that we did not comment on the question in our first opinion, for the reason that we did not view the question seriously, and were of the opinion that it was not seriously urged by former counsel.

Since carefully investigating the authorities presented in support of the motion by defendant in error, we are confirmed in our opinion as to the lack of authority supporting their contention; but in view of the urgency and insistence of present counsel, as shown in the able argument filed by them, we now feel that we were mistaken in thinking that the contention was not seriously intended, and will review the authorities cited by them, as well as present such as we think sustain our former report on the case.

Having held that the plaintiff's petition alleged a cause of actionable negligence, the question is now presented to us that there is a fundamental error in our judgment in this: The case was filed in the district court of Johnson county. A term of that court in the year 1919 began on the first Monday in May, and by law could not continue longer than Saturday before the first Monday in July. At this May, 1919, term of the court the defendant presented a general demurrer and special demurrers to the plaintiff's petition, which general demurrer was heard and sustained by the court. It is contended in the motion for rehearing that the court thereupon proceeded to and did render a final judgment in the case. That judgment as rendered was in words as follows:

"On the above day and date appeared the plaintiff and the defendant, by their attorneys, and then came on to be called and heard by the court the general demurrer and special exceptions of the defendant to the plaintiff's amended petition, and the court having heard the same read, and having heard the argument thereto, is of the opinion that the defendant's general demurrer to the plaintiff's amended petition, is well taken and should be and the same is hereby in all things sustained. It is therefore ordered, adjudged and decreed by the court that the general demurrer of the defendant to the plaintiff's amended petition be and the same is hereby in all things sustained, and that the plaintiff take nothing by this suit

and pay all costs of the suit and the defendant go hence without day, to which action of the court the plaintiff in open court excepted, and asks leave of the court to amend his amended petition, and the court granted unto the plaintiff leave to make and file an amendment to his amended petition herein."

It does not appear from the record that any further steps were taken or any other orders entered by the court at that term of the court in reference to the case. At the next term of the court leave was again granted to both parties to amend in the case, and at that term plaintiff filed his first amended petition. At that term, also, on November 25, 1919, the defendant's general demurrer addressed to this petition was sustained, and, the plaintiff declining to amend, the court dismissed the cause from the docket, and from that judgment the appeal was taken, which is now before this court.

Defendant in error's position before the court is here shown by the following propositions copied from its motion:

"These proceedings all appearing of record and being shown by the transcript, it is apparent that after the rendition of the first final judgment the case was no longer a pending cause in the district court. With that judgment final and in the defendant's favor, and having never been appealed from, reversed, or set aside, the district court was without authority to render any different judgment at a later term. Accordingly the later judgment, also in the defendant's favor, was, under any view, a correct judgment, and therefore must stand. In fact, after the rendition of the first judgment the district court was without any power to proceed in the cause."

To sustain this proposition counsel for defendant in error cite a number of authorities which we shall review, attempting to set out the actual point or points decided by the court in each case, for the purpose of ascertaining whether or not the particular case is decisive of the question before this court.

In the case of Staacke Bros. v. Walker & Chilcoat (Tex. Civ. App.) 73 S. W. 409, a partnership composed of George B. Walker and M. Benjamin Chilcoat, suit in justice court, citation was served on one of the partners, George B. Walker, but the record failed to show service upon the other partner, Chilcoat. A trial of the case was had, and judgment was entered as follows:

"This day came the parties by their attorneys and thereupon came a jury of good and lawful men, who, being duly impaneled and sworn, upon their oath do say they 'find for defendant.' It is therefore ordered and adjudged by the court that plaintiffs, Staacke Bros., take nothing by this verdict, and that the defendants, Walker & Chilcoat, do have and recover of said plaintiffs, Staacke Bros., all costs in this behalf expended, and that they have their execution for the same."

Upon appeal to the county court by Staacke Bros. the defendants moved in that court to dismiss the appeal on the following grounds: (1) That judgment was not final, in that it does not dispose of all the parties. (2) The judgment does not contain the essentials of a judgment for the defendant, in that it fails to state that plaintiffs take nothing by their suit and to state or adjudge that "defendants go hence without day." The county court sustained the motion and dismissed the case. The Court of Civil Appeals, passing upon these grounds for the county court's action, holds: (1) In suits against a partnership, service on one partner only is sufficient to sustain a judgment against the firm, under which the interest of all its members in the property of the partnership and the separate property of the individual served may be subjected to the judgment debt of the partnership; and, having arrived at this conclusion, that if such judgment in favor of plaintiffs would have been final, if so rendered upon such service, one rendered against them under the same service would also be final upon the same issues. It is further held that upon such a verdict judgment could have only been rendered against the plaintiff and in favor of the defendants for costs; also that the use of the word "verdict" in the judgment was manifestly a clerical error, and was equivalent to the use of the word "suit," and that the failure of the judgment to state the formula "that defendant go hence without day" does not render the judgment any less final than it would have been if used.

15 R. C. L. p. 1113, § 44, relates to the question of judicial knowledge by the court, and is cited as authority for the proposition that the court should take notice of the terms of the court and time covered by them.

Freeman on Judgments, § 12, is as follows:

"Both judgments and decrees, considered in relation to the jurisdiction in which they were rendered, are either foreign or domestic. Considered with regard to their effect in putting an end to an action, they are either final or interlocutory. Any judgment or decree, leaving some further action to be done by the court, before the rights of the parties are determined, and not putting an end to the action in which it is entered, is interlocutory; but, if it so completely fixes the rights of the parties that the court has nothing further to do in the action, then it is final. A final judgment or decree may only dispose of the action, leaving the plaintiff at liberty to commence another suit in the same cause as in case of a dismissal or voluntary nonsuit by the plaintiff, or it may, besides disposing of the action, determine all the rights involved in the suit, and become a bar to all other suits between the same parties in reference to the same subject-matter."

Freeman on Judgments, § 16:

"A judgment that the defendant go hence and that he recover his costs, etc., though not very formal, is a good final judgment, because no further action can be taken while it is in force."

In the case of Catherine Sydec v. Duran, 2 Posey, Unrep. Cas. 304, the following rule is made:

"The judgment rendered by the court was a final judgment, to the effect 'that the plaintiffs take nothing by their suit, and that the defendants go hence without day,' and it proceeded to dispose of the costs of the suit. This left nothing further to be adjudicated, and, whether the judgment was erroneous or not in any particular, it was nevertheless a final judgment. It was a complete disposition as to all the parties to the suit and as to all the matters in controversy under the pleadings."

A judgment reciting that the defendant's demurrers, including a general demurrer, were sustained and the case dismissed, is a final judgment. Jefferson v. Scott (Tex. Civ. App.) 135 S. W. 705. In that case, however, when the trial court sustained the demurrer to plaintiff's first amended petition, it does not appear that any leave to amend was asked, but that plaintiff insisted that he had the right to a trial on the merits, notwithstanding the ruling of the court on the exceptions, which the court denied. Eddleman v. McGlathery, 74 Tex. 280, 11 S. W. 1100, was a case where, on the failure of the party or his attorney to appear and prosecute the suit, it was dismissed by the court, with this observation:

"The judgment of dismissal at the former term was a final judgment, and it is a well-settled rule of practice in the state that, after the adjournment of the term at which such a judgment is rendered, it is no longer subject to the control of the trial court."

In the case of Ætna Insurance Co. v. Dancer, 215 S. W. 963, the jury had returned a verdict in favor of the defendant. The court noted on the docket, "Judgment for defendant on verdict of jury," but no judgment was entered in the minutes of the court. Plaintiff filed a motion for a new trial, which was not acted on at that term. On agreement of the parties, judgment nunc pro tunc was entered at the next term of court, and plaintiff thereupon immediately filed a second motion for a new trial, which was granted by the court over the objection of defendant. Upon this condition of the record it was held by the Commission of Appeals that the entry on the judge's docket was a final judgment, and that the trial court was without jurisdiction to render the last judgment; that, the first judgment being final at the term at which it was rendered and having in no way been set aside at that term, the court was without power to determine the motion.

From Bomar v. Parker, 68 Tex. 440, 4 S. W. 607, we quote:

"It seems to us, however, that there is another objection to appellant's cross-bill, which is fatal to his case. It is an original action, it is true, but one to which attaches the substantial condition of a motion for a new trial. Such a suit cannot be maintained without show-ing that the complainant has been prevented from making his motion during the time of which the judgment sought to be set aside was rendered. Hence, if the motion be made and abandoned, it is fatal to a new suit when brought for the same purpose. We think, therefore, that a party who institutes an original action for a new trial occupies no better position than one who makes his motion during the term at which the judgment is rendered, and that he should be held to the diligence of prosecuting his action to a final determination. If a demurrer to his petition be sustained, and he fail either to amend or appeal, he should be held debarred of a second action. Since he can only maintain his suit by showing that he has been guilty of no laches on the former trial or in making his motion to set aside the judgment, none should be tolerated after the suit for a new trial is brought. We have found no authority upon the point, and the question is of such rare occurrence it is probable that none exists; but in the following cases an analogous principle seems to have been maintained: Smith v. Whitmore, 1 Hemming & Miller, 576; Jones v. Burnett, 1 Brown's Par. Cases, 411."

In the case of Winter v. Texas Land & Loan Co., 54 S. W. 803, a Court of Civil Appeals decision, which was later passed on by the Supreme Court and will be commented on hereafter, it appeared that at the general term of the district court that court sustained a demurrer to the petition, and entered the following notation on his docket:

"Exceptions of defendants to plaintiff's petition sustained. Plaintiff excepts."

There was no attempt to amend the petition, and no appeal taken from the judgment. Upon this state of the record the Court of Civil Appeals held that the entry so made was a final judgment.

In Kelley v. Gibbs, 84 Tex. 144, 19 S. W. 380, 563, it is held that the court will in a garnishment proceeding take notice of the proceedings in the main suit. Also in the case of Jeffries v. Smith et al., 31 Tex. Civ. App. 582, 73 S. W. 48, it is held that, the garnishment proceeding being ancillary to the main suit in which judgment had been rendered, the court was required to take judicial knowledge of the existence and terms of the original judgment.

In the case of Coleman v. Zapp et al., 105 Tex. 493, 151 S. W. 1040, which was a proceeding by scire facias, instituted by defendants in error in the year 1909 to have entered nunc pro tunc and to revive a judgment rendered in 1903 in their favor against the plaintiff in error, in connection with which proceedings an attachment was sued out and levied, the following notation was made by the trial judge upon his docket:

"4/8/03. Judgment for plaintiff perpetuating the injunction heretofore issued, and for defendants for balance due on the judgment sued on by them, viz. $1,823, against Kate McChesney, alias Winnie Clark, and her husband

so far as he may be liable, and for intervener against both plaintiffs for amount of its debt, etc., to which defendants except and give notice of appeal.' In the entry of the judgment upon the minutes, however, that part of it which awarded a recovery in favor of these defendants in error against the plaintiff in error of $1,823 was omitted."

The contention by plaintiff in error in that case that the proceeding was an action to correct a judgment, and therefore barred by limitation provided in article 3358, Rev. Stats. 1895, is answered by Judge Phillips as follows:

"The solution of this question lies primarily in the substantial distinction which exists between the rendition and the entry of a judgment, and between the exercise of powers inherent in a court and those which depend for their operation upon the petition of parties. The judgment of a court is what the court pronounces. Its rendition is the judicial act by which the court settles and declares the decision of the law upon the matters at issue. Its entry is the ministerial act by which an enduring evidence of the judicial act is afforded. The failure of the minute entry to correctly or fully recite what the court judicially determined does not annul the act of the court, which remains the judgment of the court notwithstanding its imperfect record. Freeman on Judgments, § 38. Hence it is that from the earliest times the power of correcting or amending their records, by nunc pro tunc entry, so as to faithfully recite their action, has been possessed and exercised by the courts as an inherent right, independent of any statute, and, in the absence of express provision, unaffected by limitation."

[6] If the order entered by the trial court in this cause at its May term, 1919, had ended with the words "that the plaintiff take nothing by this suit and pay all costs of the suit and the defendant go hence without day, to which action of the court the plaintiff in open court excepted," and the plaintiff had not appealed from that order, clearly such order would have been a final judgment, and the Supreme Court would be without jurisdiction herein. But the further entry, "and asks leave of this court to amend his amended petition, and the court granted unto the plaintiff leave to make and file an amendment to his amended petition herein," presents an entirely different question, and upon this question we now present our rulings and authorities sustaining same.

Article 1910, Vernon's Texas Statutes, provides as follows:

"Pleas to the jurisdiction, pleas in abatement, and other dilatory pleas and demurrers, not involving the merits of the case, shall be determined during the term at which they are filed, if the business of the court will permit."

Rules 24 and 25 for District and County Courts, 67 S. W. xxii, also provide:

"All dilatory pleas, and all motions and exceptions relating to a suit pending, which do not go to the merits of the case, shall be tried at the first term to which the attention of the court shall be called to the same, unless passed by agreement of parties with the consent of the court; and all such pleas and motions shall be first called and disposed of before the main issue on the merits is tried.

"All motions which go to the merits of the case, and all exceptions, general and special, which relate to the substance or to the form of the pleadings, shall be decided at the first term of the court, when the case is called in the regular order for trial on the docket, if reached, whether there be an announcement on the facts or not, unless passed by agreement of parties with the consent of the court."

Article 1825 provides as follows:

"Such leave shall be given, and such amendment filed, for a reasonable time before the case is called for trial, so as not to operate as a surprise to the opposite party."

It will be observed that these articles of the statute and the rules quoted only require the exception to be decided at the term of the court at which they are filed, but they also contain the limitation that they shall be called to the attention of the court, and "if reached," whether there be an announcement on the facts or not, unless passed by agreement of the parties, and further, "if the business of the court will permit." In this case the demurrers were considered and acted on by the court at the first term, and sustained, and the question is: Did the court by his order intend to require that this amendment should be filed at that term?—the statutes and rules being silent as to any such requirement. If so, there is nothing in the order itself or in the record containing any such requirement. This being true, we will consider, first, the other proceedings to assist in determining what the language of the judgment imports, and what was the intention of the court in entering same; and, second, we will consider the judgment as entered, and to assist in determining these questions we quote from the following authorities:

[7] The order of the court entered at the November term, 1919, to our minds is conclusive of his intention in entering the first judgment. This order we set out in full:

"On this the 25th day of November, 1919, came the parties plaintiff and defendant, by their attorneys, and then came on to be heard the demurrers of the defendant to the plaintiff's amended original petition, all parties having announced ready on such demurrers, and the court having considered the pleadings of the plaintiffs and the demurrers of the defendant to such amended petition, it is of the opinion that the general demurrers should be sustained to the plaintiff's first amended original petition. It is therefore ordered, adjudged, and decreed by the court that the general demurrer of the defendant, the Texas Power & Light Company, a corporation, be and the same is hereby in all things sustained to the plaintiff's amended petition, as the said demurrers have heretofore at two previous terms been considered

and sustained by the court, and leave granted to amend plaintiff's petition, and plaintiff in amending has substantially alleged the same facts each time as cause of action herein. It is therefore ordered, adjudged, and decreed by the court that plaintiff, H. D. McCoy, take and recover nothing in this case against the defendant, the Texas Power & Light Company, and that the defendant go hence without day, and recover from the plaintiff, H. D. McCoy, all costs in this behalf expended; the plaintiff having declined to amend further than as set out in plaintiff's first amended petition. It is further ordered that execution issue in favor of the defendant against the plaintiff for cost, and in favor of the officers of the court against each party for the costs by each herein incurred and expended. The plaintiff declines to amend his first amended petition filed herein, and in open court excepts to the above judgment of the court in sustaining the defendant's general demurrers to plaintiff's first amended petition, and in open court gives notice of appeal to our Court of Civil Appeals for the Second Supreme Judicial District of Texas holding sessions at Fort Worth, Texas."

In the first place, if we should say that the first judgment is rendered ambiguous by its contradictory terms, we have a clear statement from the trial court as to his intentions in rendering same, by the language of the second judgment, in which it is recited that the plaintiff had theretofore been granted leave to amend and that the order is entered sustaining the exceptions and reciting that the—

"plaintiff, H. D. McCoy, take and recover nothing in this case against the defendant, Texas Power & Light Company, and that the defendant go hence without day, and recover from the plaintiff, H. D. McCoy, all costs in this behalf expended; the plaintiff having declined to amend further than as set out in plaintiff's first amended petition."

If the court had intended the first order to be a final judgment, he would not have given leave to plaintiff to amend, and would not in the second order have recognized his right at that time to amend.

[8] Notwithstanding the language of the judgment, that the plaintiff take nothing by his suit and go hence with his costs, the right given him to amend takes away from the judgment its finality.

"A judgment which is not final is called 'interlocutory.' That is, an interlocutory judgment is one which determines some preliminary or subordinate point or plea, or settles some step, question, or default arising in the progress of the cause, but does not adjudicate the ultimate rights of the parties or finally put the case out of court." 1 Black on Judgments, § 21.

"A final judgment is one which determines all the issues involved in the cause. The decision on an issue of law which does not put the case out of court is not of this character." 1 Black on Judgments, § 24.

On the right to amend before final action of the court the Supreme Court in the case of Jennings v. Moss, 4 Tex. 453, holds:

"If, when the petition of the plaintiff was adjudged insufficient, he had asked leave to amend, that right would, doubtless, have been accorded to him, or, if refused, a remedy would have been afforded by appeal. The statutory prohibition of amendment after the parties have announced themselves ready for trial must be understood only of an announcement of readiness for trial upon the issues of fact, and not upon the issues of law, which must first be disposed of. Any other construction would render nugatory the provision of the statute, which secures the right of amendment."

In the case of Texas Land & Loan Co. v. Winter, 93 Tex. 560, 57 S. W. 39, the same case cited by defendant in error as being decided by the Court of Civil Appeals, the Supreme Court, overruling the Court of Civil Appeals, holds as follows:

"If the proposition that the judgment upon demurrer was a final adjudication of the cause were true, it would undoubtedly follow that, after the adjournment of the term at which it was rendered, the court would have had no such jurisdiction over the parties or the subject-matter of that suit as to empower it to render, upon the issues of that cause, any further judgment affecting them. It is equally true that a failure to enter the order or judgment of the court upon the minutes does not change the attitude of the case, for, when the controversy arose, it was unquestionably competent for the court to supply the omission and to make such entry nunc pro tunc as would properly represent the action previously taken. We shall therefore treat the case as if the proper entry upon the minutes had been made in January, 1895. We cannot agree, however, to the proposition that the action then taken by the court was a final disposition of the case or of any issue in it as to any party to it. The entry made was nothing more than the recorded expression of the ruling of the court sustaining the exceptions. If the dismissal of the case should have logically followed from the ruling made, it was nevertheless essential to the finality of the action of the court that it should have declared such consequence by the judgment pronounced. It is not sufficient to constitute a final judgment that the court make a ruling which should logically lead to a final disposition of the cause, but the consequence of the ruling to the parties must be also declared. One of the accepted definitions of a final judgment is that it is 'the awarding of the judicial consequences which the law attaches to facts.' Hanks v. Thompson, 5 Texas, 6; Bradshaw v. Davis, 8 Texas, 344; Warren v. Shuman, 5 Texas, 449. Should it be conceded, therefore, as contended by defendant in error, that a dismissal of the cause or a final judgment in favor of Mrs. Winter, at least, properly followed from the ruling on exceptions, it cannot be admitted that the court, by its judgment, so declared and adjudicated. It is not enough to make a final judgment that we can see that the court ought to have rendered one."

And further:

"What the court did must have amounted to a final determination of the rights of the parties resulting from the ruling made. In the case of Andrews v. Richardson, 21 Texas, 295, an order was entered that if the plaintiff should not amend his petition by the first day of the term next succeeding the order, the case should be dismissed. The plaintiff did not amend his petition by the given time, but did amend later, and, after such amendment and the taking of various other steps in the cause, the defendant moved to dismiss because of noncompliance with the order, and the motion was sustained. The Supreme Court, in passing upon this action, said: 'The motion assumed that the failure to comply with the order operated a dismission of the cause, but this was manifestly a mistake. It required a final judgment, from which an appeal would lie, to effect such dismission. No such judgment was rendered; the cause was not dismissed.' This authority recognizes the proposition, which, in fact, runs through all our decisions on the subject, that in order to constitute a final judgment dismissing a cause, there must be an express adjudication in substance to that effect. But it cannot even be conceded that a dismissal of the plaintiff's action necessarily followed from the ruling announced by the court upon exceptions. The plaintiff, notwithstanding such ruling, had the right to amend its pleadings so long as the case remained in court. If the plaintiff declined to amend or failed to ask leave to amend, the court, if it considered that the ruling on exceptions established that there was no cause of action sufficiently averred in the petition, might have dismissed the case; but the dismissal, in such cases, 'is the immediate consequence rather of the failure to amend than of the judgment upon demurrer.' Hughes v. Lane, 25 Texas, 366. The entry made by the judge does not show either that the plaintiff did or did not ask leave to amend, but no action was taken to cut off the right of amendment at some future time. The case was thus left in suspense depending upon such order as the court might thereafter make."

[9] It occurs to us that the order entered by the court, that the plaintiff take nothing by his suit, was an inadvertent expression, which was clearly nullified by the leave to amend. However, if there is any ambiguity in the judgment by reason of its contradictory terms, we are authorized to put a common-sense construction on the language as a whole:

"The rule for construction of ambiguous judgments is clearly stated by the Supreme Court of Kansas in the following language: 'Wherever the language of a judgment is so obscure as not to clearly express the exact determination of the court; reference may be had to the pleadings, and other proceedings; and if, with the light thus thrown upon such entry, its obscurity is dispelled, and its intended significance made apparent, the judgment will be upheld and carried into effect in the same manner as though its meaning and intent were made clear by its own terms." 1 Black on Judgments, § 123.

If the judgment is ambiguous, the record in the case, including the pleadings, are admissible to aid the court in construing them. Texas Savings-Loan Association v. Banker, 26 Tex. Civ. App. 107, 61 S. W. 724, approved in 94 Tex. 701, 63 S. W. xiv (no opinion).

[10] The business of the court, not having been disposed of, is presumed to have been passed to the next term of court. That part of the business required to be disposed of at that term, that is, the consideration and determination of the demurrers, having been acted on by the court, and the court's order not fixing any time in which the amendment was to be filed, and no further action having been taken by the court, it is to be presumed the case went over as unfinished business.

Article 1919, Vernon's Statutes, provides:

"If from any cause the court shall not be held at the time prescribed by law, or if the business before the court be not determined before the adjournment thereof, such business, of whatsoever nature, remaining undetermined, shall stand continued until the next succeeding term of the court."

The clear intent of the court being that the demurrers should be sustained subject to the plaintiff's right to amend, we hold that there was no final judgment entered at the May term of court, and that the trial court did not err in considering the first amended petition as having been properly filed.

We therefore recommend that the motion for rehearing be overruled, and that the cause be reversed and remanded for trial, as originally recommended.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.