## LITTLE v. JAMES McCORD CO.

(Court of Civil Appeals of Texas. Texarkana. Nov. 28, 1912. On Motion for Rehearing, Dec. 12, 1912.)

1. NEGLIGENCE (§ 23*)—DANGEROUS PREMISES —ATTRACTIVE TO CHILDREN.

One who leaves unguarded dangerous machinery usually attractive to children is liable for injuries to a child attracted to the machinery, though he is there without express permission.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 33, 34; Dec. Dig. § 23.*]

2. EXPLOSIVES (§ 8*)—NEGLIGENCE — QUESTIONS FOR JURY.

Where an owner of explosives, consisting of Roman candles, skyrockets, and other explosives made to amuse children on holiday occasions, placed them on the premises of a third person to which children, either as licensees or trespassers, had for a long time resorted, he owed to such children the legal duty of guarding the explosives, and where he failed to do so, and a child was injured by an explosion while playing with one of the explosives, the question of his guilt of actionable negligence was for the jury.

[Ed. Note.—For other cases, see Explosives, Cent. Dig. §§ 4, 5; Dec. Dig. § 8.*]

3. EXPLOSIVES (§ 8*)—INJURIES TO CHILDREN —PROXIMATE CAUSE—QUESTION FOR JURY.

Whether the negligence of an owner of explosives, who placed them on the premises of a third person to which children resorted, was the proximate cause of an injury to a child, caused by an explosive exploding while the child handled it, *held* under the evidence for the jury.

[Ed. Note.—For other cases, see Explosives, Cent. Dig. §§ 4, 5; Dec. Dig. § 8.*]

4. NEGLIGENCE (§ 136*)—DANGEROUS PREMISES—CONTRIBUTORY NEGLIGENCE — QUESTION FOR JURY.

Whether a child, injured by an explosion of an explosive left by the owner on the premises of a third person, was guilty of contributory negligence in handling the explosive at the time of the explosion, *held* under the evidence for the jury.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 277–353; Dec. Dig. § 136.*]

On Motion for Rehearing.

5. EXPLOSIVES (§ 8*)—DANGEROUS PREMISES —LIABILITY.

Where an owner of explosives placed them on the premises of a third person, and children visited the premises in search of pecans without permission from any one, and while on the premises for that purpose discovered the explosives and then left and subsequently returned for the sole purpose of examining and playing with the explosives, and a child was injured in consequence of an explosion, the owner of the explosives could not escape liability on the ground that the pecans furnished the chief attraction which induced the children to visit the premises.

[Ed. Note.—For other cases, see Explosives, Cent. Dig. §§ 4, 5; Dec. Dig. § 8.*]

Appeal from District Court, Tarrant County; Jas. W. Swayne, Judge.

Action by Fred Little, by next friend, against the James McCord Company. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

McLean & Carlock, of Ft. Worth, for appellant. Slay, Simon & Wynn, of Ft. Worth, for appellee.

HODGES, J. Fred Little, a minor, by his next friend sued the James McCord Company for personal injuries. The petition alleges that the James McCord Company is a private corporation and owns a building called a "magazine" situated on a lot in the city of Ft. Worth, in which are stored skyrockets, firecrackers, Roman candles, dynamite caps, and other explosives; that in November, 1910, defendant carried from its magazine and deposited in an open lot a large quantity of those explosives; that the lot where this material was deposited was a pecan grove near a public highway and possessed peculiar attractions to children of tender years and was a place where such children were accustomed to resort. It was further alleged that the plaintiff was a boy 12 years of age, and was attracted to the place where those explosives had been left scattered upon the ground, and was prompted by his childish impulses to appropriate some of them; that in attempting to break one of the pieces on a rock it exploded with great violence and blew off his right hand. It is claimed that appellee was negligent in depositing dangerous and attractive explosives at a place where young children were accustomed to resort. In addition to a general denial, the defendant pleaded that the premises where the explosives were deposited were private property, and that the plaintiff was trespassing at the time he entered thereon and carried away the material which caused his injury. It is further alleged that he failed to exercise ordinary care in handling the explosive. Both the plaintiff and the defendant introduced testimony, and at the conclusion the jury were peremptorily instructed to return a verdict for the defendant. From the judgment rendered in accordance with that verdict this appeal is prosecuted.

The only assignment of error is one which assails the action of the court in directing the verdict for the defendant. There appears to be no dispute in the testimony about the fact that appellant was injured in the manner and by the agency alleged; neither is there any controversy as to the fact that the appellee owned the magazine and the explosives, and that its agents had previously car-

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

ried them out of the building and deposited the box in which they were contained in an open lot where they were accessible to any one who might wish to appropriate them. The evidence showed that the lot upon which the magazine was situated belonged to the Collins estate and was under the management and control of Judge C. K. Bell, the administrator of that estate. It also appears that the lot was a strip of land about 180 feet wide and much longer, lying adjacent to one of the highways of the city and in a vicinity containing some private residences. The appellee did not have any interest in the lot, and its magazine was kept there by permission of the administrator. A negro named William Cowen occupied a residence upon the lot, with his family, and was charged with the duty of looking after the property and keeping off trespassers. There were quite a number of pecan trees situated on this lot, and it required some effort to prevent trespassers from depredating thereon during the season when pecans were falling. The premises were inclosed with a wire fence, and were entered through a gate situated near the house occupied by Cowen. Notices showing that the premises were posted were to be seen at different points over the fence and near the gate. Under one of the large pecan trees was a swing such as are used by children at play, which had been placed there some time during the year preceding appellant's injury. In November, 1910, and prior to the day when the appellant was injured, the appellee had its magazine cleared of old material which was considered worthless for the market. One of the employés testified that in cleaning out the magazine a large wooden box filled with this rubbish was carried out about a hundred feet and dumped upon the ground near one of those pecan trees. Another of appellee's employés testified that on previous occasions when the magazine was cleaned out it was the practice to burn the old material but that was not done on this occasion because of the high wind prevailing at the time and the danger of communicating fire to other objects. The appellant, Fred Little, testified in substance that the accident occurred on Monday, November 28, 1910, and that he was 12 years old in the preceding September. On the Sunday before the accident he, in company with some other boys near his age, went to this lot for the purpose of getting pecans. They were standing on the outside of the fence when Jess Cowen, the son of William Cowen, invited them to come inside. They entered through the gate, which at the time was partly open, and after gathering pecans started home. The Cowen boy then called their attention to this material, which had been placed near one of the pecan trees by the agents of the appellee. He testified that this rubbish was about 50 feet from the gate and within about 25 feet of the swing previously mentioned. The box was open, and the material was scattered around upon the ground. There was quite a lot of it. They took a few articles which they called "sparklers," something attached to a piece of wire which when ignited would emit sparks but made no noise. Some of these he carried home with him. He returned about 2 o'clock the same afternoon. His father, mother, uncle, and aunt were with him. On the following Monday he attended school, and while there he and several other boys agreed to again visit this pile of explosives and get some of them. They were dismissed from school about 3 o'clock, and immediately repaired to the grove for that purpose. They picked up some of the material and started home. Appellant says that he carried some in his cap—had about 10 or 12 boxes of what he called "dynamite caps." He had never seen anything like that before. They had melted and run together. He had seen the little ones, but not those which had coagulated. They all started home; and after reaching a point about a quarter of a mile distant he undertook to break one of those which had melted and run together, for the purpose of giving a piece of it to one of the other boys, when it exploded with great force and blew off his right hand. He undertook to break it upon a rock, and stated that he had no idea that there was any danger in doing so. He admitted that he knew the grounds were posted, and that he had seen the sign. A chemist who testified upon the trial stated that he had examined the explosives which were shown to be similar to the one that caused the injury, and found that they contained a mixture of potassium chlorate and sulphur mixed with sand; that when the sand is struck there is a certain amount of friction, or heat, generated, causing the sulphur to unite with the oxygen, producing combustion; that it was the friction and striking that caused the explosion. It appears from other portions of the testimony that these explosives had previously been a part of the appellee's stock of goods, and for some reason had become melted, or partially dissolved by water, and had run together, so that numbers of them were sometimes coagulated into a single mass. There was other testimony sufficient to show that boys in large numbers frequented this lot in search of pecans; that sometimes they were ordered out by Cowen or members of his family, and at other times they were not molested. Cowen's testimony justified the inference that he was willing for some of the boys who resided in the neighborhood to come on the premises and gather pecans after he had supplied Judge Bell and himself. In one portion of his testimony Cowen stated that it was impossible to keep the boys away; that they "came there in droves."

[1, 2] In order to establish a legal liability in a case like this, it is necessary that the evidence be sufficient to support a finding by the jury that the defendant owed the plaintiff a legal duty and had negligently failed to perform it. In the case of Dob-

bins' v. Railway Co., 91 Tex. 60, 41 S. W. 62, 38 L. R. A. 573, 66 Am. St. Rep. 856, an effort was made to hold the defendant liable for the death of a small child that was drowned in a pond of water caused by the construction of the railroad. The facts were held insufficient; the court concluding as a matter of law that an ordinary pond of water was not so unusually attractive to children as to impose upon the owner of the premises any duty to guard against its use by them. In disposing of the case, Judge Denman used the following language: "The common law imposes no duty upon the owner to use care to keep his property in such condition that persons going thereon without his invitation may not be injured. In considering the question as to whether a duty exists, there is no distinction between a case where an infant is injured and one where the injury is to an adult, though where the duty is imposed the law may exact more vigilance in its discharge as to the former." But in the well-known "turntable cases" it is held that the owner cannot escape liability for a resulting injury if he places on his premises and leaves unguarded dangerous machinery *unusually* attractive to children, even though the injured child was there without express permission. Railway Co. v. Morgan, 92 Tex. 102, 46 S. W. 28. There is no sound reason for restricting that rule to injuries resulting from unguarded turntables. It is not because the object which furnished the attraction and caused the injury is a turntable, and the owner of the premises a railroad corporation, that the duty of exercising due care to save children from their own indiscretion is imposed in such cases; but the rule is regarded as a salutary requirement which should be enforced for the protection of the lives and limbs of those too young to be held responsible, under all conditions, for their own lack of judgment. Human life and personal safety are the most important objects of governmental protection, and the policy of imposing civil liability upon those whose carelessness or indifference may cause the loss of either is one of the most effective means of inspiring a proper degree of diligence to avoid injurious or fatal accidents resulting from exposure to dangerous agencies and hazardous situations. There was evidence offered upon the trial of this case sufficient to warrant the jury in finding the following facts: That a box containing dangerous explosives was taken by agents of the appellee from its magazine and dumped upon the ground in a lot which was at the time under the management and control of a third party; that this lot, though inclosed and posted, was frequently visited by children, some of whom went there by invitation from the occupants, and a large number of others either as licensees or trespassers; that the chief attraction which caused children to resort to that place was the large number of pecan trees growing

thereon, and a desire to gather nuts during the pecan season; that this attraction was so strong that those in charge of the premises were unable to keep children away. If an ordinary turntable may be looked upon as such an unusually attractive object as to impose upon owners the duty of guarding against its use by children, we see no good reason why Roman candles, skyrockets and other explosives made for the purpose of amusing children at Christmas times and on holiday occasions should not also be so regarded. Hence the jury would have been justified in this case in concluding that the defendant had placed upon this lot, to which large numbers of children resorted, dangerous explosives *unusually* attractive to them. It would seem that these facts are sufficient to show the existence of the legal duty before referred to, and a failure in its performance. Whether or not this failure was the result of negligence on the part of the defendant is an issue of fact which might, under the evidence, have been determined against the appellee.

We have so far inquired into the sufficiency of the evidence to support a finding in favor of the plaintiff upon the hypothesis that the defendant was either the owner of the premises or had the legal right to use them as a dumping ground for its waste material. The facts do not entirely justify that inference. The evidence shows that the James McCord Company had merely the permissive right to maintain a magazine for the storage of such explosives upon those premises, and the incidental right of ingress and egress. While there was no objection made to leaving this rubbish upon the premises, the evidence shows that no opportunity was given for any; that the owner and manager had no notice that it was done until after the accident occurred. By discarding this rubbish in the manner shown by the evidence, the appellee extended to all children who might go upon those premises an implied invitation to appropriate as much of it as they saw fit. Whether the children were rightfully there, or were there as trespassers, they violated no rights of the defendant in availing themselves of that privilege.

[3, 4] It is also contended that, even if the defendant be held negligent in leaving the explosive material where it was, its negligence was not the proximate cause of the injury. That issue and the defense of contributory negligence were questions which should, under proper instructions, have been submitted for determination by the jury.

Our conclusion is that the trial court erred in instructing a peremptory verdict for the defendant. The judgment will therefore be reversed, and the cause remanded.

### On Motion for Rehearing.

[5] Counsel for appellee insist in their motion for a rehearing that, inasmuch as the evidence conclusively shows that the pecans

furnished the chief attraction which induced children to visit that inclosure, there should be no liability attached to the conduct of the appellee in placing other objects thereon which did not furnish any attraction for children to resort to that place. The argument is based upon a misconception of what we think is the underlying principle upon which the liability of the appellee in this case must rest. It is true that the evidence does show that up to the time of the appellant's first visit to that place the pecans were the only attraction, and that on that occasion he went inside only in response to an invitation from Cowen's boy. But it is also true that large numbers of children did visit that grove in search of pecans, and did so without any permission from any one. This created a condition which even the owner of the premises could not wholly ignore in casting away or depositing thereon dangerous objects possessing special or unusual attractions to such children. Certainly the right to so incumber the premises with such dangerous and attractive objects would be still less available to one who had no legal right to so use such premises. The proof in this case does show that, on the occasion when those explosives were obtained and carried away by the appellant and his companions, they were attracted to that place by these objects alone. If the conduct of the appellee in depositing them in that particular place should not here be held as tantamount to an implied invitation to enter the inclosure, it must be due to the fact that appellee had no authority to extend such an invitation. It did, however, extend an invitation, in so far as one may be implied from casting away such toys and playthings, to all children who might be upon those premises from any motive or purpose. There can be no hard and fast rule laid down by the courts for determining common-law liability resulting from personal negligence. Each case must be determined by its own facts. The question presented is: Would a person of ordinary prudence have deposited such objects at such a place under the circumstances detailed by the evidence in this case? We adhere to the holding that the evidence presented a question which the court should have submitted to the jury, and the motion is overruled.