**J. P. SMITH, d/b/a Guadalupe Gas Company, Appellant,**

**v.**

**Otto KOENNING et al., Appellees.**

No. 128.

Court of Civil Appeals of Texas.

Corpus Christi.

Dec. 30, 1965.

Rehearing Denied Jan. 27, 1966.

**412**

Beckmann, Stanard, Wood & Vance, by John H. Wood, Jr., San Antonio, Denver E. Perkins, Gonzales, for appellant.

John A. Romberg, Roger M. Dreyer, Gonzales, for appellees.

SHARPE, Justice.

This appeal is from a judgment rendered after jury trial in favor of Otto Koenning, his wife and minor daughter, appellees here and plaintiffs below, hereafter sometimes referred to as "Koenning", against J. P. Smith, doing business as Guadalupe Gas Company, appellant here and defendant below, hereafter sometimes referred to as "Smith," in the amount of $17,400.00, representing damages resulting from a fire on February 23, 1962, which destroyed the residence and other property of appellees.

The judgment is necessarily based upon jury answers to special issues which submitted essential fact questions under the doctrine of res ipsa loquitur. The special issues relating to negligence on the part of Smith were answered favorably to him, and the verdict would not otherwise support a judgment in favor of Koenning.

The basic questions presented relate to whether the evidence was legally sufficient to raise the essential elements of res ipsa loquitur and to support the jury findings made in connection therewith.

Smith was a retail butane and propane gas dealer, doing business as Guadalupe Gas Company in the Nixon, Smiley and Westhoff area. He owned and operated a gas delivery truck which was entrusted to the care, custody and control of Otto Lee Koenning, an employee, who was also the son of appellees' Otto and Ida Koenning. On the occasion of the fire, the gas delivery truck had been driven by Otto Lee Koenning on to the yard of appellees' farm residence near Westhoff, Texas, for the purpose of making a delivery of butane gas by transferring it from the truck into a storage tank located on the premises. Before the delivery was made, butane gas

escaped from the delivery truck, became ignited, and caused the fire and damages in question under the circumstances hereafter set out. Otto Lee Koenning was the only eye witness to the accident. On the trial of the case he testified, in substance, that as he approached his parent's residence he saw a horse in his father's field; that he stopped the butane gas delivery truck on the north side of the residence; that the butane storage tank of appellees was on the south side of the house; that he left the truck unattended in order to chase and catch the horse; that after he caught the horse, saddled it and tied it to a tree, he walked back toward the delivery truck; that, although he did not see it, he heard the hose on the butane side rupture or burst and gas escaping; that he had not reached the truck when this happened; that the gas was coming from the right hand side of the front part of the propane tank; and that shortly thereafter the gas was ignited and the fire occurred. Appellees were not at home at the time of such event. Otto Lee Koenning, prior to the trial, had made a number of statements which were contradictory in some respects to his testimony at the trial, and appellant attempted to impeach his testimony on such basis.

The evidence undisputedly establishes that the employment of Otto Lee Koenning was of a general nature; that he was on duty 24 hours a day 7 days a week in connection with Smith's business; that Smith's delivery truck was entrusted to Otto Lee Koenning at all times whether he was engaged in delivering gas for Smith or attending to his own business.

The charge of the Court included 28 special issues, but the jury answers with which we are primarily concerned are those on Special Issues 1, 19, 20, 21, 22 and 23. The substance of such findings will be summarized. In answer to Special Issue 1 the jury found that at the time and place of the fire on February 23, 1962, Otto Lee Koenning was acting in the scope of his employment as a driver and salesman for Smith. In answer to Special Issue 19 the jury found that Smith in person or by his employees was in exclusive possession of the tanks, trucks, plumbing, pipes and fittings at the time of and for a reasonable time prior to the fire. In answer to Special Issue 20 the jury found that gas escaped from the tanks, plumbing, piping, and fittings of defendant Smith at or immediately prior to the fire in question. In answer to Special Issue 21 the jury found that the escaping of gas from defendant's tanks, trucks, hoses, pipes and fittings, at and immediately preceding the fire, was something that does not ordinarily happen if those in control of same exercise due care. In answer to Special Issue 22 the jury found that Smith was negligent in the operating or maintenance of his truck, tanks, piping, hoses and fittings in question at and immediately prior to the fire on February 23, 1962. In answer to Special Issue 23 the jury found that the negligence of Smith was a proximate cause of the fire. Issues 2 through 18 inquired concerning specific acts, omissions or negligence on the part of Smith, together with related issues as to proximate cause; and, with the exception of Issue 16, all of the issues unconditionally submitted were answered favorably to Smith. In answer to Special Issue 16 the jury found "that the truck, tanks, plumbing and fittings of the defendant J. P. Smith was operated on plaintiffs' (appellees) premises on February 23, 1962, with the manual cut-off valve from the propane tank in an open or partially open position." However, in answer to Special Issue 17 the jury found that such fact (open position of cut-off valve) was not negligence. Disposition of this case does not turn upon Issues Numbers 24 through 28. Issue 24 was answered favorably to Koenning, to the effect that the occurrence was not an unavoidable accident. Issue 25 was eliminated by stipulation. Issues 26 through 28 fixed the damages.

On this appeal Smith, by four points of error, contends that the trial court erred

in holding that Koenning adduced sufficient evidence of probative force to prove (1) that all of the instrumentalities allegedly causing the fire were in the exclusive possession and control of appellant because it is undisputed that appellant's employee, Otto Lee Koenning, was not acting in the course and scope of his employment at the time of the fire, or (2) that the appellant had superior knowledge of the cause of the fire or the alleged defect causing such fire, and that "direct" evidence necessary for appellees to prove specific acts of negligence against appellant was shown to be wholly unavailable to appellees, to the extent that only the appellant would, of necessity, be aware of the cause of such fire, or (3) to establish that the fire was of such nature as not ordinarily to occur in the absence of negligence of the appellant, or (4) that there was a total absence of a reasonable explanation by the appellant, which would possibly rebut negligence on his part. On oral argument, counsel for Smith has reiterated that these are all "no evidence" points. Although Smith contends that there must be evidence of probative force to show the existence of all four of the above-mentioned elements, he concedes that only two of them (i. e., (1) exclusive possession control, mentioned in point one, and (2) nature of the occurrence as one not ordinarily happening without negligence, mentioned in point three) are ultimate jury issues. There is no contention that appellees were in any way at fault in connection with the accident.

Disposition of this case depends largely upon appellant's point one, which will hereafter be discussed in detail. Appellant's points two and four, involving the questions of superior knowledge and explanation by appellant, are closely related to and grow out of appellant's possession or control. Appellant's point three presents no difficulty. The character of the accident is one that does not ordinarily happen in the absence of negligence, and there is abundant evidence of probative force to establish such fact and to support the jury finding to such effect.

Smith's basic contention under his point one is that there was no evidence to support the finding of the jury on Special Issue 19 that "the defendant in person or by his employees was in exclusive possession of the tanks, trucks, plumbing, piping and fittings at the time of and for a reasonable time prior to the fire in question." He argues that the evidence establishes that Otto Lee Koenning deviated from his employment for a period of 10 to 15 minutes in chasing and catching a horse for purely personal reasons; that Otto Lee Koenning was not within the scope of his employment for Smith when the hose broke on the delivery truck nor when the fire started; that such facts demonstrate that there was no evidence to support a finding that the truck was in the exclusive possession and control of appellant; and, therefore, the doctrine of res ipsa loquitur was inapplicable to this case. Smith also contends under his point one that since there is direct proof by Koenning as to the forces which operated together to cause the escaping gas to ignite, and that, particularly, the evidence points to the fact that an open flame of a nearby water heater was maintained by Koenning, and that there is no evidence to show that Smith had the right to control the flame or that Smith knew where the flame was located before the fire or that Smith knew that if gas escaped it would probably direct itself to the flame, that res ipsa loquitur does not apply.

Koenning contends that the ultimate question is whether Smith had possession and control of the delivery truck from which gas escaped, became ignited and destroyed appellees' property; that the question of scope of employment is an evidentiary one which is included within the ultimate issue of possession and control by Smith; that, in any event Otto Lee Koenning was acting in the scope of his employment; that it was not necessary for Smith, in person or by an employee, to be physically in possession of the delivery

truck at the specific moment of the injury in order for res ipsa loquitur to be applicable; that, in legal contemplation, the delivery truck was in Smith's possession or custody and under his management and control at the time the gas escaped and caused the damages in question; that control of the water heater flame by Smith was not essential to application of res ipsa loquitur; that LP gas is a dangerous agency and that Smith owed a duty to the general public to prevent gas from escaping from his delivery truck wherever it was located; and that where the servant is permitted to mix his private affairs with those of the master the courts will not undertake fine distinctions and fix with precision the line which separates the act of the servant from that of the master. We agree with appellees' contentions.

■ In the recent case of Bond v. Otis Elevator Company, 388 S.W.2d 681, 686 (Tex.1965) our Supreme Court had reiterated the essential elements of res ipsa loquitur as follows:

"In the case of Honea v. Coca-Cola Bottling Company, 143 Tex. 272, 183 S.W.2d 968, 160 A.L.R. 1445, the court said:

'Res ipsa loquitur is a rule of evidence whereby negligence of the alleged wrongdoer may be inferred from the mere fact that the accident happened, provided (1) the character of the accident and the circumstances attending it lead reasonably to the belief that, in the absence of negligence, it would not have occurred, and (2) the thing which caused the injury is shown to have been under the management and control of the alleged wrongdoer. Washington v. [Missouri] K. & T. Ry. Co., 90 Tex. 314, 38 S.W. 764; Texas & P. Coal Co. v. Kowsikowski, 103 Tex. 173, 125 S.W. 3; Wichita Falls Traction Co. v. Elliott, 125 Tex. 248, 81 S.W.2d 659.' "

Even when the above-mentioned elements are established so as to make the doctrine of res ipsa loquitur applicable, the issues of negligence and proximate cause must be properly established. In this case, the jury findings were favorable to Koenning and established all four of the above-mentioned issues in his favor, i. e., the two elements necessary to make the doctrine of res ipsa loquitur applicable and on the issues of negligence and proximate cause.

Texas Appellate Courts have approved the oft-quoted passage from Justice Pitney's opinion in Sweeney v. Erving, 228 U.S. 233, 33 S.Ct. 416, 57 L.Ed. 815, as follows:

"In our opinion, res ipsa loquitur means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict. *Res ipsa loquitur*, where it applies, does not convert the defendant's general issue into an affirmative defense. When all the evidence is in, the question for the jury is whether the preponderance is with the plaintiff."

See: Gulf, C. & S. F. Ry. Co. v. Dunman, Tex.Com.App., 27 S.W.2d 116, 72 A.L.R. 90; Benkendorfer v. Garrett, 143 S.W.2d 1020 (Tex.Civ.App., 1940, opinion by Norvell, J.); Gandy v. Southwestern Bell Telephone Co., 341 S.W.2d 554, 85 A.L.R.2d 833 (Tex.Civ.App., 1960, n. w. h., opinion by Pope, J.).

■ Judicial knowledge may be taken of the inherently explosive and dangerous nature of butane gas. Bussey v. Mack, 209 S.W.2d 385 (Tex.Civ.App., 1948, n. w. h.). The Legislature has recognized such facts by passing statutes relating to the

subject of Liquefied Petroleum Gas. See Art. 6066d, Vernon's Ann.Civ.St., known as "The Liquefied Petroleum Gas Code" or "LPG Code". That Statute, among other things, provides as follows:

"Sec. 3. A. General. The Railroad Commission of Texas is hereby authorized, empowered, and directed, and it shall be its duty to promulgate and adopt, in accordance with this Act, adequate rules, regulations, and/or standards pertaining to any and all aspects or phases of the LPG industry (except as provided in Subsection D. of this Section) which will protect or tend to protect the health, welfare, and safety of the general public."

Other sections of the Statute relate specifically to various aspects of the LPG industry, such as containers, tanks, appliances, systems, equipment, trucks, trailers, other motor vehicles, licenses, dealers, employees, applications, hearings, registrations, fees, investigations, bonds, insurance, inspections and penalties. Pursuant to the Statute, The Railroad Commission of Texas has promulgated regulations known as LPG Docket No. 1 (1961), a copy of which was offered in evidence herein.

■ In addition to the provisions of the Statute and Regulations just mentioned, the rule is well settled that those who distribute a dangerous article or agent owe a degree of protection to the public proportionate to and commensurate with the dangers involved. McAfee v. Travis Gas Corporation, 137 Tex. 314, 153 S.W.2d 442, 447 (1941); Lane v. Community Natural Gas, 133 Tex. 128, 123 S.W.2d 639 (1939). In connection with a master who uses dangerous instrumentalities in the prosecution of his business, it has been held in the case of Atex Construction Co. v. Farrow, 71 S.W.2d 323, 325 (Tex.Civ.App. 1934, n. w. h.) that

" * * * when he intrusts them to a servant or employee, the proper cus-

tody and use thereof become a part of such servant's or employee's employment, and he must use the same degree of care and attention as the law requires of the master; and, when such dangerous instrumentalities are negligently permitted to escape the custody or possession of the servant or employee and injury is done to a third person, the master is liable for the consequences of such injury. The master is also liable for the passive negligence of his servant or employee in failing to safely keep such dangerous instrumentalities committed to his care in the discharge of the master's business and in failing to take proper precautions for the protection of the public. Branch v. I. & G. N. Ry. Co., 92 Tex. 288, 47 S.W. 974, 71 Am.St.Rep. 844; City of Lubbock v. Bagwell (Tex.Civ.App.) 206 S.W. 371, writ of error refused; Moore v. Jefferson City Light Co., 163 Mo.App. 266, 146 S.W. 825; Clark v. Du Pont de Nemours Powder Co., 94 Kan. 268, 146 P. 320, L.R.A.1915E, 479, Ann.Cas.1917B, 340; Pittsburgh, etc., Ry. Co. v. Shields, 47 Ohio St. 387, 24 N.E. 658, 8 L.R.A. 464, 21 Am.St.Rep. 840; Little v. McCord Co. (Tex.Civ.App.) 151 S. W. 835; 29 Tex.Jur. 420, § 249; 39 C. J. 1288, § (1483) (b)."

Smith's reliance here on the case of Galveston, H. & S. A. Ry. Co. v. Currie, 100 Tex. 136, 96 S.W. 1073, 10 L.R.A.,N.S., 367 (1906), is misplaced. In that case the defendant's employee inflicted the injury in question while engaged in an independent affirmative act whereby he diverted an air hose away from the master's business and used it for his own amusement. There the master was properly held not liable. In deciding the case, the court discussed several examples wherein the servant, in pursuing his own business or pleasure, neglects also to perform some duty which rests upon the master, and may make the master responsible if injury falls upon an-

other as the consequence of that neglect. At page 1078 of the opinion the court said:

"It may be just to charge a master with liability for the failure of a servant to properly guard a dangerous agency, with the duty of guarding which the servant has been intrusted, when, in consequence of such failure, injury proximately results to another; but to say that the master, assuming that there has been no negligence in selecting and retaining the servant, is liable for the independent act of that servant in diverting the thing from the master's business, and using it in his own, or as an instrument of malice or amusement, is to lose sight of the principle underlying the whole subject. The distinction is thus illustrated in the Shields Case [Pittsburgh, C. & St. L. Ry. Co. v. Shields, 47 Ohio St. 387, 24 N.E. 658]: 'To better illustrate the ground of this distinction, we may, for example, suppose a servant, with others under his control, employed with a construction train, repairing the track of his master. He may, for a time, quit his employment, and, with his men, go off on affairs of his own. Whilst thus out of the master's employment, he may build a fire which, through his negligence, may consume the property of another, and, in the meantime, loss of life and property may result from a collision with the train negligently left standing on the track. Now whilst, as has been held, the master would not be liable for the loss resulting from the fire, because the act was done outside the servant's employment (Morier v. Railway Company, 31 Minn. 351, 17 N. W. 952, 47 Am.Rep. 793), yet it is equally certain that, for the loss occasioned by the servant's negligence in leaving the train on the track, the master would be liable in damages, for the plain reason that, in abandoning the custody of the train, he was guilty of negligence in the employment of the master, whilst, in building the fire,

he was not.' Railway v. Shields, 47 Ohio St. 394, 24 N.E. 658. In the case here stated the train and the engine drawing it would be eminently dangerous forces which may give rise to dangers in many different ways, and they are of such a character and so used that it is difficult for any employé connected with them to so completely divert them, or any of their more dangerous parts, such as their whistles, their steam, and the like, from the railroad operations as to entirely disconnect his personal use of them from his use as a servant."

■ The rule is also well settled that where a servant is permitted at his own discretion, to mix his own private affairs with those of the master, or even to attend to both at substantially the same time, the courts will not undertake to make nice distinctions and fix with precision the line that separates the act of the servant from the act of the master, where it appears that the act in question occurred at a time when the servant was engaged in the performance or furtherance of matters coming within the general scope of his employment; and the master will be held responsible, unless it clearly appears that the servant could not have been directly or indirectly serving his master in the act, the negligent performance of which caused the injury. See Smith v. Conner, 211 S.W.2d 630 (Tex. Civ.App.1948, n. w. h.), and the cases therein cited; Wilhoit v. Iverson Tool Co., 119 S.W.2d 709 (Tex.Civ.App.1938, wr. dism. by agreement); Josey-Miller Company v. Sheppard, 357 S.W.2d 488 (Tex.Civ.App. 1962, n. w. h.); Texas Power & Light Co. v. Evans, 225 S.W.2d 879 (Tex.Civ.App. 1949, n. w. h.). In the last-cited case, in connection with the issue concerning scope of employment, the court, on rehearing said:

"As stated in our original opinion, this, under the circumstances here, was a controverted jury issue. We find the clearest statement of the rule in an opinion by the then Chief Justice Car-

dozo of the Court of Appeals of New York in Marks' Dependents v. Gray et al., 251 N.Y. 90, 167 N.E. 181, 183, which was cited with approval by this Court in McKim v. Commercial Standard Ins. Co. [Tex.Civ.App.], 179 S.W. 2d 357, writ refused. The test in the Marks case was stated as follows: 'The test in brief is this: If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. Clawson v. Pierce-Arrow Motor Co., 231 N.Y. 273, 131 N.E. 914. If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the private purpose, though the business errand was undone, the travel is then personal, and personal the risk.'" 225 S.W.2d 883.

Under his point one Smith also contends that since there is direct proof by Koenning as to the forces which operated together to cause the escaping gas to ignite, and particularly that the evidence points to the fact that an open flame of a water heater was maintained by Koenning, there is no evidence to show that Smith had a right to control the flame, or that Smith knew where the flame was located before the fire, or that Smith knew that if gas escaped it would probably direct itself to the flame, that res ipsa loquitur does not apply. In the case of Wichita City Lines v. Puckett, 156 Tex. 456, 295 S.W.2d 894 (1956), the court said:

"The bus company contends that there is no evidence showing how the fire started. It is suggested that the soldier who briefly talked with Ferguson may have thrown down a lighted match or cigarette or that a nail in his shoe may have struck a spark from the concrete floor. It was also suggested that oily rags in a small tool room may have ignited spontaneously or that a spark may have been generated by static electricity or come from defective wiring. Other suggestions were made but there was no proof of the origin of the igniting spark or flame. However, in our view of this case the origin of the igniting spark or flame is immaterial." 295 S.W.2d 896–897.

\*   \*   \*   \*   \*   \*

"We believe that the evidence supports the other findings of the jury as to negligence and proximate cause but there is no necessity for discussion of these other findings. Through the negligence of the bus company gasoline fumes were allowed to escape into the building where they settled near the floor and created a highly dangerous situation. The bus company is not relieved of the consequences of this negligence because the spark that ignited the fumes was of unknown origin. It could have foreseen that the highly inflammable fumes were likely to be ignited, and the fact that a soldier deliberately or negligently ignited them by dropping a lighted match or cigarette, or that a spark or flame of unknown origin ignited the fumes, does not break the chain of causation. Robert R. Walker, Inc., v. Burgdorf, 150 Tex. 603, 244 S.W.2d 506; Texas Co. v. Gibson, Tex.Civ. App., 88 S.W.2d 757, reversed on another point, 131 Tex. 598, 116 S.W.2d 686; Fort Worth Gas Co. v. Cooper, Tex.Civ.App., 241 S.W. 282 (er. dism.)." 295 S.W.2d 897.

\*   \*   \*   \*   \*   \*

"The submission of the res ipsa liquitur issues to the jury similarly referred not to the origin or mere occurrence of the fire but to the exposure of gasoline fumes in the operation of equipment under the sole and exclusive control of the bus company." 295 S. W.2d 897–898.

■ Smith's last-stated contention as to control of the water heater flame is not well taken under the reasoning and holdings in Wichita City Lines v. Puckett, supra.

Under the rules recognized by the foregoing authorities, it appears that Smith's point one is without merit. Smith's employment of Otto Lee Koenning was of a general nature. Otto Lee Koenning was on duty 24 hours a day, 7 days a week for the purpose of making deliveries of LP gas to Smith's customers. Smith entrusted the possession and care of the delivery truck to Otto Lee Koenning at all times, including the occasions upon which Otto Lee Koenning would attend to his own personal business. It is clear that Smith owed a duty to the public, as well as his customers to guard the dangerous instrumentality which he set in motion. He elected to perform this duty through his employee, Otto Lee Koenning. On the occasion in question Otto Lee Koenning was undoubtedly acting within the general scope of his employment when he drove the truck to his parent's home in order to make a delivery of butane gas. When Otto Lee Koenning left the delivery truck to chase the horse, he, nevertheless, remained in legal possession and control of it, as did Smith through him. Smith's duty to guard the truck was thus breached by Otto Lee Koenning. The conduct of Otto Lee Koenning in temporarily leaving the delivery truck is legally chargeable to Smith, even though it was motivated by Otto Lee Koenning's desire to chase a horse. The possession, control, operation and maintenance of the delivery truck by Smith, through Otto Lee Koenning, could properly be found to have been negligently exercised. Appellees' suit is not grounded upon any act of negligence by Otto Lee Koenning in chasing, catching or saddling the horse; instead, it is based upon negligence, circumstantially established through application of res ipsa loquitur, in the management of the dangerous instrumentality set in motion by Smith.

■ The evidence was legally sufficient to support the jury finding on Special Issue 19, that Smith, in person or by his employees, was in exclusive possession of the delivery truck and equipment at the time of and for a reasonable time prior to the fire, which was the essential inquiry. The evidence was also legally sufficient to support the jury finding on Special Issue 1 that at the time and place of the fire Otto Lee Koenning was acting within the scope of his employment for Smith.

Appellant's point one is overruled.

■ Under his point two, Smith contends that there was no evidence to establish that he had superior knowledge of the cause of the fire, or that direct evidence to prove specific acts of negligence against him was shown to be wholly unavailable to Koenning, and that only Koenning would, of necessity, be aware of the cause of the fire.

Such contentions are both factually and legally not well taken. The evidence shows that Koenning was a farmer and rancher, and neither he, his wife nor his daughter had any training or experience in the propensities of LP Gas or the operation of a delivery truck carrying the same, except that they used it for heating purposes in their residence. On the other hand it was shown that Smith had long experience with such gasses and had passed a Railroad Commission examination in connection with the same. He was the owner of a business dealing in LP gas and was the responsible operator of the delivery truck. The fact that Otto Lee Koenning was the son of appellees Otto and Ida Koenning does not alter Smith's legal liability. There are no allegations of collusion, fraud, or intentional injury in this case. Smith also held a patent on one portion of the equipment used on said truck. As we have held in connection with Smith's point one, he was in exclusive possession and control of the delivery truck, through his employee, at the time it was driven on to Koenning's premises to make a delivery of gas, and

at the time of the fire appellees were not at home.

The evidence herein does not show that anyone knew as a fact exactly what caused the gas to escape. Otto Lee Koenning testified that he heard a noise, which he thought was the rupturing of a hose, and saw gas escaping. Hugh Keepers, Chief Inspector of the LP Gas Division of the Texas Railroad Commission, who made an investigation and report of the accident, testified that it was his impression or opinion that a hose had ruptured, permitting gas to escape, but he was not certain as to a *particular hose.*

■ In connection with his contention that there was no evidence to show superior knowledge on his part, Smith relies, in part, on the case of Carothers v. Olshan, 198 S.W.2d 941 (Tex.Civ.App., 1947, wr. ref. n. r. e.). In that case, in a non-jury trial, the trial court found that the defendant was not guilty of any negligence and plaintiff suffered no damages as a result thereof. The Court of Civil Appeals affirmed on the ground that the finding of no negligence was sufficiently supported by evidence. Texas Practice, McCormick & Ray, Evidence, Vol. 1, Sec. 108, pp. 147–148, mentions Carothers v. Olshan as one of a few Texas cases purporting to hold that the evidence to explain the occurrence must be more readily available to the defendant than to the plaintiff in order for the doctrine of res ipsa loquitur to be applicable. The cited text states that "It is believed, however, that these cases do not represent the prevailing Texas rule," and makes reference to the excellent article "Res Ipsa Loquitur in Texas" 26 Tex.L. Rev. 257, 761, (1948) authored by S. T. Morris, discussing the application and effect of the doctrine. That article points out, at page 271, that "In at least three cases the court has refused to apply res ipsa loquitur upon the basis, inter alia, that explanatory evidence of the cause of the occurrence was freely available to the plaintiff," citing, in footnote 67, the cases of

Carothers v. Olshan, supra; Alley v. Texas Electric Service Co., 134 S.W.2d 762 (Tex. Civ.App.1939, n. w. h.); and Southland Greyhound Lines, Inc. v. Frausto, 69 S.W.2d 497 (Tex.Civ.App.1934, wr. dism.); Cf. International Creosoting & Construction Co. v. Daniel, 114 S.W.2d 393 (Tex. Civ.App.1938, wr. dism.). The article then further states:

"* * * However, in each of those cases it is extremely doubtful that the doctrine could have been applied in any event, since one or more of the first three elements was probably missing, thus failing to raise any acceptable inference of defendant's negligence. In several cases the doctrine has been applied even though plaintiff has alleged and sought to prove specific acts of negligence thus apparently indicating the availability of evidence to him. It has been applied in cases in which it seems doubtful that explanatory evidence was available to the defendant.[69] And in the numerous cases of fairly simple occurrence such as falling light fixtures, and the like, it is almost inconceivable that a diligent plaintiff's attorney would not be able to procure all the explanatory evidence necessary to make out a case on direct evidence, if one can be made out, yet *res ipsa* is applied."

Under footnote 69, above referred to, the following cases are cited: Tyreco Refining Co. v. Cook, 110 S.W.2d 219 (Tex.Civ.App., 1939, wr. dism.); Texas Utilities Co. v. Dear, 64 S.W.2d 807 (Tex.Civ.App., 1933, wr. dism.); Gulf C. & S. F. Ry. Co. v. Wood, 63 S.W. 164 (Tex.Civ.App., 1901, n. w. h.). Those cases and the leading Supreme Court cases on res ipsa loquitur stand for the proposition that there is no rigid requirement that evidence to explain the occurrence must be more readily accessible to the defendant than to the plaintiff. See 26 Tex.L.Rev. 775, footnote 130. As is stated in Wichita Falls Traction Co. v. Elliott, 125 Tex. 248, 81 S.W.2d 659 (1935), when the two basic requirements of

res ipsa loquitur exist "The theory is that plaintiff is not in a position to show the particular circumstances which caused the equipment to operate to his injury, and that defendant possesses the superior knowledge or means of information as to the cause of the defect, if any; and should therefore be required to produce the evidence in explanation." Res ipsa loquitur is circumstantial evidence and nothing more. When the two essential elements mentioned by our Supreme Court in Bond v. Otis Elevator Company, supra, are present, the matters of superior knowledge and explanation, or absence of it, by the defendant, may follow, but they are not independent elements which must be established in order to apply the doctrine of res ipsa loquitur.

 The contentions made by Smith under his point two are closely related to those made under his point four. However, Smith's position under the last-mentioned point, that the trial court held that there was no evidence to prove that there was a total absence of a reasonable explanation by him which would possibly rebut negligence on his part, is not borne out by the record. There is no such trial court holding. Smith came forward with evidence in the trial court in an effort to escape the inference of negligence which was created by the nature of the occurrence in question and by his exclusive possession, management and control of the dangerous instrumentality involved. He was entitled to do this, but we cannot hold that such evidence conclusively rebutted the inference of negligence which was properly established. The jury could have found the issue of negligence either way, and, if it had been found in favor of Smith, a recovery for Koenning would not be authorized. Since the jury found that Smith was negligent under the conditions stated, and that such negligence was a proximate cause of the fire in question, we must credit such findings, even though Smith attempted to explain his conduct as non-negligent. See

Gulf C. & S. F. Ry. Co. v. Dunman, Tex. Com.App., 27 S.W.2d 116, 118.

It appears that this case was fully developed by both sides. The fact that Koenning alleged and attempted to prove specific acts or omissions of negligence on the part of Smith and failed to establish the same, under the cases herein cited, does not prevent recovery against Smith on properly supported findings under the doctrine of res ipsa loquitur. Wichita Falls Traction Co. v. Elliott, supra; 26 Tex.L. Rev. 767 (1948). Smith's points two and four are overruled.

The judgment of the trial court is affirmed.