

# NUMBER 13-18-00236-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**MICHAEL A. GARZA,**                                     **Appellant,**

**v.**

**WELL MED MEDICAL MANAGEMENT, INC.,**           **Appellee.**

---

### On appeal from the County Court at Law No. 3
### of Nueces County, Texas.

---

# MEMORANDUM OPINION

### Before Chief Justice Contreras and Justices Longoria and Perkes
### Memorandum Opinion by Justice Perkes

Appellant Michael A. Garza sued appellee Well Med Medical Management, Inc.

(Well Med) for personal injuries suffered in a collision with Joanne Garcia, an employee

of Well Med, asserting a cause of action for negligence under the doctrine of respondeat

superior. The trial court granted a traditional motion for summary judgment in favor of Well Med, which Garza contests in his sole issue on appeal. We affirm.

## I.    BACKGROUND

On or about October 27, 2015, Garcia's vehicle struck a vehicle occupied by Garza. Garza claims that Garcia told him shortly after the collision that she had been reviewing papers for her employer, Well Med, while she was driving.

Garza filed suit against Garcia, alleging that her negligence proximately caused the accident, and against Well Med under the doctrine of respondeat superior, alleging that Garcia had acted in the course and scope of her employment. Following an answer and general denial, Well Med filed a traditional motion for summary judgment, asserting that Garcia was not acting in the course and scope of her employment at the time of the accident. Well Med's summary judgment evidence included Garcia's deposition and sworn affidavit.

During her deposition, Garcia stated that when the accident occurred: she was traveling from home to work in her personal vehicle; she had not been running an errand or executing any duties on behalf of Well Med; she was in no way compensated for her travel by Well Med; and Well Med did not dictate the route she took. Garcia claimed sole responsibility for the accident:

Q.    Okay. can you tell me in your own words, how the accident happened?

A.    It was a very busy day. We were driving down[—]there's a two lane road headed towards Crosstown. Actually, [I] went over the intersection, and I saw the flow of vehicles driving. And I do remember looking down, and then I looked up, that's when I hit him.

. . . .

2

Q. Okay. You said just before the accident you were looking down?

A. Uh-huh. I had—I don't know if I had a newspaper or papers on my car. I usually check my mail every day, so I don't know what I had on my car. I just know they were sliding forward, and I reached over to stop those.

Q. Okay. You were checking your mail, you said?

A. No, no, no, no. I wasn't checking my—I usually check my mail everyday before I leave for work.

. . . .

Q. Okay. So as you sit here today, you can't tell me exactly what papers you were looking at, at the time you were looking down before the accident?

A. I didn't look at them, I reached over because they were falling off the seat—

Q. Okay.

A. —so I reached to stop them from falling off the seat, and that's—

Q. But you don't remember what kind of papers those were?

A. No.

. . . .

Q. Do you know if they were Well Med papers?

A. No, sir.

Q. Okay. No, you don' t know or they—

A. No. They weren't Well Med papers.

Q. Okay.

A. No. Not that I recall.

> Q. Okay. So let me go back to the accident a little more, and ask you who's at fault in causing the accident?
>
> A. I was at fault.

With respect to Garcia's employment duties, Garcia stated that though Well Med authorized Garcia to work from home and outside of normal working hours, "after hours" work was not reported, and any work completed was at the employee's discretion. Well Med has also never explicitly disapproved of Garcia working under certain out-of-office conditions:

> Q. And Well[]Med has never told you, and it's rare that you hear an employer say it: "Don't you dare work an extra minute past 5:00 p.m.?
>
> A. No, sir.
>
> Q. They never told you that?
>
> A. No.
>
> Q. Okay. And do they ever say, "Don't you dare do any work at your house"?
>
> A. No, sir.
>
> Q. Have they ever said to you, "Don't you dare do any work in your car"?
>
> A. No, sir.

Garza argued that Garcia's statement made to him shortly after the collision that she was "looking at paperwork for work" prior to impact, combined with her deposition statements that Well Med allowed her to work outside office hours, evidences that she was acting in the course and scope of her employment at the time of the accident.

The trial court granted Well Med's motion for summary judgment. This appeal followed.

4

## II. SUMMARY JUDGMENT

### A. Standard of Review

We review de novo a trial court's granting of a motion for summary judgment. *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 837 (Tex. 2018); *Dorsey v. Raval*, 480 S.W.3d 10, 18 (Tex. App.—Corpus Christi–Edinburg 2015, no pet.). The movant in a motion for summary judgment has the burden to show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a (c); *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 130 (Tex. 2018). If the movant carries this burden, the burden shifts to the non-movant to raise a genuine issue of material fact precluding summary judgment. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018) (citing *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995)). In deciding whether a genuine issue precludes summary judgment, we must treat all evidence favorable to the non-movant as true and indulge every reasonable inference and resolve all doubts in its favor. *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017).

### B. Applicable Law

Under the doctrine of respondeat superior, "an employer is vicariously liable for its employee's negligent acts if those acts are within the course and scope of his employment." *Painter*, 561 S.W.3d at 131. In the "course and scope of employment" means "within the scope of the employee's general authority in furtherance of the employer's business and for the accomplishment of the object for which the employee was hired." *Id.* (quoting *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 757 (Tex. 2007)). Additionally, the employee's act must be of the same general nature as, or

5

incidental to, authorized conduct. *Id.* In other words, if an employee deviates from the performance of her duties for her own purposes, her employer is not responsible for what occurs during that deviation. *Id.*

In the context of a vehicle collision, "employers generally are not liable for accidents involving their employees while the employees are traveling to and from work." *Ten Hagen Excavating, Inc. v. Castro-Lopez*, 503 S.W.3d 463, 476 (Tex. App.—Dallas 2016, pet. denied); *see, e.g.*, *Gant v. Dumas Glass & Mirror, Inc.*, 935 S.W.2d 202, 212 (Tex. App.—Amarillo 1996, no writ) (finding that defendant was not in course and scope of his employment at the time of collision when "evidence revealed that [the defendant] was . . . eating lunch en route to work"); *J & C Drilling Co. v. Salaiz*, 866 S.W.2d 632, 637 (Tex. App.—San Antonio 1993, no writ) (holding that evidence was not sufficient to raise an issue of course and scope of employment when the "accident occurred as [the defendant] was returning from his personal errand," despite evidence that he was on-call 24 hours a day and was driving his company vehicle); *Wilson v. H.E. Butt Grocery Co.*, 758 S.W.2d 904, 907 (Tex. App.—Corpus Christi–Edinburg 1988, no writ) (providing that the employer was entitled to summary judgment where facts indicated the employee had completed her work and was driving home in her own vehicle when the accident occurred).

Courts, however, have recognized a general exception to the traveling to and from work rule where "an employee has undertaken 'a special mission at the direction of his employer' or is otherwise performing 'a service in furtherance of [his] employer's business with the express or implied approval of [his] employer.'" *Painter*, 561 S.W.3d at 136

6

(quoting *J & C Drilling Co.*, 866 S.W.2d at 636; *Gebert v. Clifton*, 553 S.W.2d 230, 232 (Tex. App.—Houston [14th Dist.] 1977, writ dism'd)).

**C.    Analysis**

Neither party disputes that Garcia is an employee of Well Med. The parties, however, disagree whether she was acting in the course and scope of her employment at the time of the collision.

Well Med presented evidence that: (1) Garcia was driving from home to work in her personal vehicle; (2) Garcia's job responsibilities had not yet begun; (3) Garcia was not in the course of regularly or specifically assigned duties; and (4) Well Med did not control any manner or means of Garcia's transportation. *Painter*, 561 S.W.3d at 139 ("[A]n employee is generally not acting within the scope of his employment when traveling to and from work . . . . However, we also recognize an exception when such travel involves the performance of regular or specifically assigned duties for the benefit of the employer."). Conversely, Garza relied on Garcia's statement made to him after the accident that she was "looking at paperwork for work" at the time—coupled with her deposition concessions that her job as a senior marketing specialist required her to review documents and that she was not prohibited from working outside of the office or outside of normal working hours—as evidence of Well Med's implied approval of her actions.

Accepting Garza's evidence as fact, *see Lightning*, 520 S.W.3d at 45, there remains no evidence that Garcia's alleged actions—"looking at paperwork for work" while en route to work—was a "regular or specifically assigned dut[y]." *See Painter*, 561 S.W.3d at 131. Moreover, this case is distinguishable from cases cited by Garza, in which

7

employees exercised said duties as dictated by their employers.[1] For example, in *Arbelaez v. Just Brakes Corp.*, our sister court reversed a trial court's summary judgment in favor of the employer where the evidence indicated that at the time of the car accident, the defendant was "on the clock," he had been *directed by a supervisor* to pick up breakfast for co-workers, the "breakfast run" was a daily routine, and he was paid gas money weekly to run this errand. 149 S.W.3d 717, 718 (Tex. App.—Austin 2004, no pet.); *see Laverie v. Wetherbe*, 517 S.W.3d 748, 753 (Tex. 2017) (noting the traditional scope-of-employment analysis in respondeat-superior cases "concerns only whether the employee is discharging the duties generally assigned to her"); *see also, e.g.*, *Mayes*, 236 S.W.3d at 757 (holding that summary-judgment evidence was insufficient to raise a fact issue regarding course and scope of employment when employee was on a personal errand, driving the company truck loaded with company products for delivery, was available via pager twenty-four hours a day, and was not restricted from using truck for personal business). Here, the evidence did not show that Well Med, in authorizing Garcia to work from home or after hours, also authorized, asked, or directed Garcia to review documents while driving, nor did it show that Well Med was even aware of her actions.

---

[1] In his brief, Garza cites past cases in which we held that

> where a servant is permitted, at his own discretion, to mix his own private affairs with those of the master, or even to attend to both at substantially the same time, the courts will not undertake to make nice distinctions and fix with precision the line that separates the act of the servant from the act of the master.

*Gilgon, Inc. v. Hart*, 893 S.W.2d 562, 568 (Tex. App.—Corpus Christi–Edinburg 1994, writ denied) (citing *Smith v. Koenning*, 398 S.W.2d 411, 417 (Tex. App.—Corpus Christi–Edinburg 1965, writ ref'd n.r.e.)). But the Texas Supreme Court has more recently held: "[I]f an employee deviates from the performance of his duties for his own purposes, the employer is not responsible for what occurs during that deviation." *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 131 (Tex. 2018); *see Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 757 (Tex. 2007); *see also Grogan v. Elite Metal Fabricators, Inc.*, No. 02-18-00048-CV, 2018 WL 6424216, at *6 (Tex. App.—Fort Worth Dec. 6, 2018, no pet.) (mem. op.) (acknowledging the court's "long history of absolving a corporation of negligence when its employee embarks on a frolic of his own").

We have found no authority, and Garza provides us with none, to support a finding of implied acquiescence of specific conduct—working while driving—based on an employer's prior authorization of only tangentially-related conduct, namely, working past 5 p.m. or working from home.

Absent evidence of a genuine issue of material fact, we conclude that the trial court did not err in granting summary judgment to Well Med on Garza's claims of liability under the respondeat superior doctrine. *See* TEX. R. CIV. P. 166a (c). We overrule Garza's sole issue on appeal.

### III.    CONCLUSION

We affirm the trial court's judgment.

GREGORY T. PERKES
Justice

Delivered and filed the
5th day of March, 2020.

9